## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

GREG O'GARA, On Behalf Of The ESTATE
OF TAMARA PORTNICK, Individually and On
Behalf Of All Others Similarly Situated,

          Plaintiff,

vs.

COUNTRYWIDE HOME LOANS, INC., a
wholly-owned subsidiary of COUNTRYWIDE
FINANCIAL CORPORATION,

          Defendant.

Civil Action No. 08-113 (JJF)

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE
## DEFENSES ASSERTED IN DEFENDANT'S ANSWER

**OF COUNSEL:**

HARWOOD FEFFER LLP
Robert I. Harwood
Jeffrey M. Norton (*pro hac vice*)
Roy Shimon
488 Madison Avenue
New York, NY 10022
(212) 935-7400
rharwood@hfesq.com
jnorton@hfesq.com
rshimon@hfesq.com

Dated: July 3, 2008

ROSENTHAL, MONHAIT & GODDESS, P.A.
Norman M. Monhait (#1040)
Carmella P. Keener (#2810)
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, Delaware 19899-1070
(302) 656-4433
nmonhait@rmgglaw.com
ckeener@rmgglaw.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................... ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............ 1

NATURE AND STAGE OF PROCEEDINGS ................................. 2

ARGUMENT ............................................................................... 2

    A.    The Third, Twenty-Third, And Twenty-Fourth
Affirmative Defenses Are Improperly Raised ............... 3

        1.    Lack Of Standing Is Not An Affirmative Defense ... 3

        2.    Reserving Right To Raise Additional Defenses
Is Improper ................................................................ 4

    B.    The Fourth, Sixth, Eighth, Ninth, Thirteenth, Nineteenth,
Twentieth, Twenty-First, And Twenty-Second Affirmative
Defenses Are Inadequately Pled Under Rule 8 .............. 4

        1.    Fourth Affirmative Defense Is Inadequately Pled ... 4

        2.    Thirteenth Affirmative Defense Is Inadequately Pled ... 5

        3.    Eighth Affirmative Defense Is Inadequately Plead ... 5

        4.    Sixth, Ninth, And Twenty-Second Affirmative Defenses
Are Inadequately Pled ................................................ 6

        5.    Nineteenth, Twentieth, And Twenty-First Affirmative
Defenses Are Inadequately Pled ................................ 7

    C.    Granting Countrywide Leave To Replead Would Be Futile ... 8

CONCLUSION ........................................................................... 10

## TABLE OF AUTHORITIES

**Case**                                                      **Page(s)**

*AMEC Civil, LLC v. DMJM Harris, Inc.*,
    2007 WL 433328 (D. N.J. 2007)                              4

*Bobbit v. Victorian House, Inc.*,
    532 F. Supp. 734 (N.D. Ill. 1982)                          3, 4

*De Lage Landen Financial Services, Inc.*
    *v. M.D.M. Leasing Corp.*,
    2007 WL 4355037 (N.D. Ill. 2007)                           3

*Directv, Inc. v. Figler*,
    2006 WL 318825 (W.D. Pa. 2006)                             2

*France Telecom S.A. v. Novell, Inc.*,
    2002 WL 31355255 (D. Del. 2002)                           3, 5

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.*,
    883 F.2d 1286 (7th Cir. 1989)                              3

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997)                               8

*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*,
    2003 WL 1720073 (N.D. Ill. 2003)                           3

*Shechter v. Comptroller of City of New York*,
    79 F.3d 265 (2d Cir. 1996)                                 3

*Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*,
    213 F.R.D. 307 (N.D. Ill. 2003)                            2

*U.S. v. Union Corp.*,
    194 F.R.D. 223 (E.D. Pa. 2000)                             8

*Washam v. J.C. Penney Co., Inc.*,
    19 F. Supp. 554 (D.C. Del. 1981)                           3

*Wyshak v. City Nat. Bank*,
    607 F.2d 824 (9th Cir. 1979)                               3

**Other Statutes And Authorities**

| | |
|---|---|
| Fed. R. Civ. P. 8 | *passim* |
| Fed. R. Civ. P. 9 | 2, 5 |
| Fed. R. Civ. P. 12 | 2 |
| 5 Wright & Miller, *Federal Practice and Procedures* §1274 | 3 |

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff Greg O'Gara, as Successor Trustee to the Estate of Tamara Portnick, files this reply brief in support of his Motion to Strike Affirmative Defenses Asserted in Defendant's Answer (the "Motion to Strike"). For the reasons stated below, the third, fourth, sixth, eighth, ninth, thirteenth, and nineteenth through twenty-fourth affirmative defenses (the "Affirmative Defenses") asserted in Defendant Countrywide's Answer and Affirmative Defenses should be stricken.[1]

Countrywide attempts to circumvent Rule 8's pleading standard by raising Affirmative Defenses that are without foundation, immaterial, and purely conclusory. Such pleadings fail to place the Plaintiff on notice as to the factual or legal basis for each Affirmative Defense. For example, Countrywide's Sixth, Ninth and Thirteenth Affirmative Defenses are entirely conclusory allegations premised on affirmative acts or agreements that Countrywide fails to identify or provide any factual basis for. Remarkably, Countrywide's Nineteenth, Twentieth and Twenty-First Affirmative Defenses are premised on alleged state court enforcement and foreclosure proceedings or other unspecified litigation that never occurred. Similarly, Countrywide's Twenty-Second Affirmative Defense is premised on a non-existent arbitration agreement. Because Countrywide failed to establish any basis for the Affirmative Defenses, the Affirmative Defenses should be stricken accordingly.

---

[1] "Countrywide" refers to Defendant Countrywide Home Loans, Inc., a wholly-owned subsidiary of Countrywide Financial Corporation.

## NATURE AND STAGE OF PROCEEDINGS

On February 25, 2008, Plaintiff filed a Class Action Complaint (the "Complaint") on behalf of those individuals who were overcharged for costs, fees, and expenses, including attorneys' fees, in connection with Enforcement Proceedings[2] between February 15, 2002 through and including the present (the "Class Period"). (D.I.1).  On May 16, 2008, Countrywide filed an Answer to the Complaint wherein it raised twenty-four affirmative defenses. (D.I. 8).  On June 5, 2008, Plaintiff filed its Motion to Strike the Affirmative Defenses pursuant to Fed. R. Civ. P. 12(f). (D.I. 10).  On June 23, 2008, Countrywide filed Defendant's Answering Brief In Opposition To Plaintiff's Motion To Strike Affirmative Defenses (the "Opposition Brief"), to which Plaintiff submits this reply. (D.I.15).

## ARGUMENT

In determining whether to strike an affirmative defense as being insufficient under Fed. R. Civ. P. 12(f), courts impose a three-part test: (1) the allegations must be properly pleaded as an affirmative defense; (2) the allegations must be adequately pleaded under the requirements of Rules 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge – that is, if Countrywide could prove no set of facts in support of the affirmative defense that would defeat the Complaint, the defense must be stricken as legally inadequate. *See Directv, Inc. v. Figler*, 2006 WL 318825, *1 (W.D. Pa. 2006) (citing *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.,* 213 F.R.D. 307, 308 (N.D. Ill. 2003).  For an affirmative defense to be adequately pled under Rule 8, it must

---

[2]    The term "Enforcement Proceedings" includes collectively Countrywide's actions in enforcing the terms of mortgage documents and promissory notes against mortgage borrowers up to and including foreclosure, including actions taken by Countrywide in connection with borrower bankruptcies.

be pled with enough specificity to provide Plaintiff with "fair notice" of the defense and the basis thereof so that Plaintiff is not victim of unfair surprise.[3]  Because Countrywide's Affirmative Defenses are improperly raised or otherwise fail to satisfy Rule 8, they should be stricken.

> ### A.    The Third, Twenty-Third, And Twenty-Fourth Affirmative Defenses Are Improperly Raised
>
> #### 1.    Lack Of Standing Is Not An Affirmative Defense

Lack of standing is not available to Countrywide as an affirmative defense. *See* Fed. R. Civ. P. 8(c) (lack of standing not enumerated as an affirmative defense).[4]  Unable to establish that it did not improperly mistitle lack of standing as an affirmative defense, Countrywide attempts to excuse the error by claiming that it had taken "additional precaution" in doing so. *See* Opposition Brief at 8 (citing *Bobbit v. Victorian House, Inc.*, 532 F. Supp. 734, 736 (N.D. Ill. 1982)).  However, Countrywide's precautions aside,

---

[3]    *See France Telecom S.A. v. Novell, Inc.*, 2002 WL 31355255, *1 (D. Del. 2002); *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979) ("The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.") (citing 5 Wright & Miller, *Federal Practice and Procedures*, §1274 at 323). Accordingly, an affirmative defense is legally insufficient if it is based wholly on conclusory allegations. *See Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (in striking affirmative defense, holding that, "Affirmative [d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy."); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir. 1989) (striking affirmative defense as being "meritless" where defenses were "nothing but bare bones conclusory allegations. [Defendants] omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claims."); *Washam v. J.C. Penney Co., Inc.*, 519 F. Supp. 554, 562 (D.C. Del. 1981) (striking defense raised where allegations "provided[d] no basis for such a defense").

[4]    Although Rule 8(c)'s list of affirmative defenses is non-exhaustive, courts have specifically held that lack of standing does not constitute an affirmative defense. *See* Motion to Strike at 5 (citing *e.g.*, *De Lage Landen Financial Services, Inc. v. M.D.M. Leasing Corp.*, 2007 WL 4355037, *3 (N.D. Ill. 2007) ("Because a plaintiff must plead and ultimately prove standing, lack of standing is not an affirmative defense under federal law."); *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2003 WL 1720073, *4 (N.D. Ill. 2003) (holding that lack of standing is not an affirmative defense)).  Opting not to confront this issue, Countrywide has omitted any basis for this Court to hold otherwise. *See* Opposition at 4-9.

affirmative defenses must be stricken "where it is completely certain they have been mistitled" as affirmative defenses. *Bobbit*, 532 F. Supp. at 737.

**2.   Reserving Right To Raise Additional Defenses Is Improper**

The reservation of a right to raise additional affirmative defenses during the course of the litigation strays far outside the boundaries of what constitutes an affirmative defense. Unable to establish otherwise, Countrywide instead supposes that it "could do nothing more" than assert the right to raise additional affirmative defenses (Twenty-Third; *see* Opposition Brief at 8), and that since the envisioned "additional defenses" are presently "unknown, it is difficult to see what else [Countrywide] should have done." (Twenty-Fourth; *see* Opposition Brief at 9). This rationale is puzzling and illogical.

Because Rule 8 requires fair notice of the affirmative defense and the basis thereof, Countrywide's reservation of the mere *right* to raise additional defenses throughout the litigation is not a proper affirmative defense. *See e.g.*, *AMEC Civil, LLC v. DMJM Harris, Inc.,* 2007 WL 433328, at *5 (D. N.J. 2007) (striking affirmative defense because it "simply reserves the right to rely on other affirmative defenses that may be determined through discovery."). Accordingly, the Twenty-Third and Twenty-Fourth Affirmative Defenses should be stricken.

**B.   The Fourth, Sixth, Eighth, Ninth, Thirteenth, Nineteenth, Twentieth, Twenty-First, And Twenty-Second Affirmative Defenses Are Inadequately Pled Under Rule 8**

**1.   Fourth Affirmative Defense Is Inadequately Pled**

Countrywide brazenly claims that Rule 8 can be satisfied by alleging nothing more than the term "laches." Opposition Brief at 5. However, this is precisely the type of bare-bones, conclusory statement that will not suffice under Rule 8. Indeed, because of

Countrywide's failure to make *any* statement as to the grounds for raising this affirmative defense, Plaintiff has not been put on fair notice as to the basis for a laches claim.    For example, in clear defiance of Rule 8, Countrywide does not even identify a time period to constitute and unreasonable delay by Plaintiff or even claim that Countrywide has been prejudiced by such time period in any way.  In any event, Plaintiff commenced this action less than two months of the alleged harm – hardly a prejudicial delay where a six-year statute of limitations applies.

### 2.    Thirteenth Affirmative Defense Is Inadequately Pled

By merely claiming that "[t]he doctrine of unclean hands bars some or all of the claims," Countrywide omits *any* basis for this Affirmative Defense.    Indeed, the allegation fails to provide Plaintiff with any notice as to the basis for the alleged misconduct asserted.  Where unclean hands is alleged, the type of misconduct alleged is of particular significance because it dictates whether the affirmative defense must be plead under Rule 8 or Rule 9(b). *See Novell*, 2002 WL 31355255, at **2-3 (holding that if the alleged misconduct is rooted in fraud or mistake, the affirmative defense of unclean hands must be plead with particularity under Rule 9(b) "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings.").  In any event, Countrywide's affirmative defense of unclean hands is inadequately pled even under the more liberal standard of Rule 8.  Accordingly, the Affirmative Defense of unclean hands must be stricken.

### 3.    Eighth Affirmative Defense Is Inadequately Pled

Countrywide inadequately alleges that "state law claims are preempted, in whole or in part, by federal statutory, regulatory, or common law, including but not limited to,

the National Bank Act and/or the Home Owners' Loan Act." In flouting Rule 8's fair notice requirement, Countrywide proclaims that merely identifying the titles of two broad federal statutes is sufficient under Rule 8. Countrywide is mistaken.

Although Countrywide identified by name two such laws, Countrywide fails to identify the provisions or even the legal basis for how those laws preempt Plaintiff's state law claims. Although Rule 8 does not require Countrywide to provide detailed reasoning for how each provision of each federal statute precludes Plaintiff's claims as a matter of law, Plaintiff cannot be placed on fair notice of the basis for Countrywide's preemption claims without, at a minimum, being informed as to the relevant statutory section(s) and/or provision(s) the Affirmative Defense is based on. Moreover, to the extent that Countrywide asserts that state law claims are preempted by law, including "*but not limited to*," Countrywide fails to provide Plaintiff with fair notice as to what additional laws serve as the basis for this Affirmative Defense. Allowing Countrywide to raise an affirmative defense of preemption based on undisclosed laws will expose Plaintiff to the precise type of "unfair surprise" prohibited by Rule 8.

### 4.    Sixth, Ninth, And Twenty-Second Affirmative Defenses Are Inadequately Pled

Likewise, Countrywide fails to provide any basis for the Sixth ("accord and satisfaction, compromise and release or novation"), Ninth ("waiver and estoppel"), and Twenty-Second (Plaintiff's claims are subject to arbitration) affirmative defenses. These affirmative defenses will ultimately require Countrywide to establish that Plaintiff and Countrywide entered into a new or separate agreement that supersedes or controls the terms of the contract that serves as the basis for Plaintiff's claims. However, in offering no basis for any of these affirmative defenses, Countrywide omits any allegation that

such agreements exist with respect to any of these Affirmative Defenses.  Countrywide argues that these three Affirmative Defenses should not be stricken simply because Plaintiff "may disagree with these defenses." Opposition Brief at 6.  However, Plaintiff cannot disagree with something he has no knowledge or awareness of.  Countrywide's inability to identify any alleged superseding agreement(s) between the parties is a fatal deficiency under Rule 8.

Countrywide's pleading of its arbitration affirmative defense is particularly troubling under Rule 8 scrutiny.  Specifically, Countrywide asserts that "Plaintiff's claims are subject to arbitration, *if there is a valid arbitration agreement.*" Opposition Brief at 6 (emphasis added).   Thus, not only does Countrywide fail to provide Plaintiff with a short and plain statement as to the basis for this affirmative defense, but Countrywide cannot even identify any arbitration agreement existing between Plaintiff and Countrywide.  Countrywide erroneously claims that whether or not an arbitration agreement actually exists is irrelevant on a motion to strike. Opposition Brief at 6.  But, of course the existence of an arbitration agreement is relevant in determining whether Countrywide has adequately pled an affirmative defense predicated on there being such an agreement.  Even if Rule 8 does not require Countrywide to plead specific facts in support of its claim that the arbitration agreement warrants abstention, Rule 8 surely mandates that Countrywide identify an arbitration agreement serving the basis for this Affirmative Defense.

### 5. Nineteenth, Twentieth, And Twenty-First Affirmative Defenses Are Inadequately Pled

Countrywide claims that its Twentieth ("collateral attack on state foreclose proceedings") and Twenty-First ("collateral estoppel and/or *res judicata*") affirmative

defenses cannot be stricken if there is any doubt about their validity. Opposition Brief at 9. As a matter of fact, there can be no doubt about their *invalidity*, as Countrywide never commenced state foreclosure proceedings against the Plaintiff and Plaintiff's claims have not been adjudicated on the merits in any prior litigation. There can also be no doubt that there are no pending state court enforcement proceedings to justify any basis for Countrywide's Nineteenth affirmative defense of abstention. Accordingly, there is no basis for these affirmative defenses. Tellingly, Countrywide cannot identify any state foreclosure proceeding, any prior litigation on the issues and claims brought in this case, or any state court enforcement proceeding that could possibly serve as the basis for affirmative defenses of collateral attack, collateral estoppel and/or res judicata, and abstention, respectively. Because Countrywide is unable to elicit *any* doubt as to the nullity of these affirmative defenses, the Nineteenth, Twentieth, and Twenty-First affirmative defenses should be stricken as inadequately pled and immaterial.

## C.    <u>Granting Countrywide Leave To Replead Would Be Futile</u>

A "district court justifiably may deny leave to amend on grounds such as undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." *U.S. v. Union Corp*., 194 F.R.D. 223, 236-37 (E.D. Pa. 2000) (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Countrywide should not be granted leave to replead any Affirmative Defense if it is not possible to cure its pleading deficiencies. *See Union Corp*., 194 F.R.D. at 235 ("the preferred practice is to grant leave to amend at the time of dismissal whenever it appears that the pleader could cure the defect by amendment").

Countrywide's Sixth and Ninth Affirmative Defenses are not, and cannot be, sufficiently plead under Rule 8. Because Plaintiff never entered into, or performed in satisfaction of, any superseding agreement with Countrywide and never agreed to waive any claims against Countrywide, permitting Countrywide to replead these Affirmative Defenses would be futile. Even given the opportunity in opposition to Plaintiff's motion and in requesting leave to replead, Countrywide still failed to proffer any evidence or provide a factual basis for either of these Affirmative Defenses. Accordingly, leave to replead should be denied.

Similarly, in order for Countrywide's Nineteenth, Twentieth, and Twenty-First Affirmative Defenses to apply, some pending judicial proceeding or other state enforcement or foreclosure proceeding would have to exist. Countrywide has not, and as a matter of law cannot, plead the existence of such proceedings because they never occurred. Countrywide fails to provide any evidence to the contrary and therefore repleading would be futile.

Countrywide also cannot cure its pleading deficiencies with respect to the Twenty-Second affirmative defense because there is no arbitration agreement in existence between Plaintiff and Countrywide which could possibly serve as the basis for this affirmative defense. In fact, Countrywide is well aware that no arbitration agreement exists and its fashioning of this affirmative defense – "*if* there is a valid arbitration agreement" – underscores the point. Again, given the opportunity to proffer evidence of the same, Countrywide failed to do so.

Finally, for the reasons stated above, lack of standing and the mere reservation of rights to raise additional defenses throughout the course of this litigation do not constitute

proper affirmative defenses.  Regardless of how Countrywide words its pleading of such claims, the Third, Twenty-Third and Twenty-Fourth Affirmative Defenses cannot properly be raised as affirmative defenses.  Accordingly, permitting Countrywide to replead these Affirmative Defenses would be futile.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Strike the Affirmative Defenses.

Dated:  July 3, 2008

Respectfully submitted,

**OF COUNSEL:**

**ROSENTHAL MONHAIT & GODDESS, P.A.**

By: _Norman M. Monhait_

HARWOOD FEFFER LLP
Robert I. Harwood
Jeffrey M. Norton (*pro hac vice*)
Roy Shimon
488 Madison Avenue
New York, NY 10022
 (212) 935-7400
rharwood@hfesq.com
jnorton@hfesq.com
rshimon@hfesq.com

Norman M. Monhait (#1040)
Carmella P. Keener (#2810)
919 Market Street, Suite 1401
Citizens Bank Center
Wilmington, DE 19899-1070
(302) 656-4433
nmonhait@rmgglaw.com
ckeener@rmgglaw.com

*Attorneys for Plaintiff*

# EXHIBIT A

## Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)
**(Cite as: 2007 WL 433328 (D.N.J.))**

Page 1

**C**
Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court,
D. New Jersey.
AMEC CIVIL, LLC, Plaintiff,
v.
DMJM HARRIS, INC., Defendant.
**Civil Action No. 06-64 (FLW).**

Feb. 6, 2007.
Kevin N. Starkey, Starkey, Kelly, Bauer, Kenneally
& Cunnigham, Brick, NJ, for Plaintiff.

Timothy F. Hegarty, Zetlin & De Chiara Llp, Caldwell, NJ, for Defendant.

**OPINION**

WOLFSON, United States District Judge.

**\*1** Presently before the Court is a Motion pursuant to Local Civil Rule 7.1(i) by Defendant, DMJM Harris, Inc., ("DMJM"), seeking reconsideration of this Court's October 23, 2006 Order denying Defendant's Motion to Dismiss. Specifically, DMJM argues that reconsideration is necessary to avoid manifest injustice. In addition, Plaintiff, AMEC Civil, LLC, ("AMEC") has filed a Motion to Strike Affirmative Defenses. The Court has considered the moving, opposition and reply papers, and for the reasons stated in the opinion below, Defendant's Motion is denied and Plaintiff's Motion is granted in part and denied in part.

**I. Background**

On January 6, 2006, AMEC filed a Complaint against DMJM alleging professional negligence arising out of the design of the Shark River Bridge Project in Monmouth County, New Jersey. On July 21, 2006, DMJM filed a Motion to Dismiss contending: (1) that dismissal was appropriate because NJDOT was an indispensable party who could not

be joined pursuant to Fed.R.Civ.P. 19;(2) that the Court should abstain from exercising jurisdiction pursuant to the Colorado River Abstention Doctrine; and (3) that AMEC failed to plead properly plead diversity jurisdiction.

Following a hearing on October 23, 2006, this Court denied DMJM's Motion to Dismiss finding that there was diversity jurisdiction, that the Colorado River Abstention Doctrine was not applicable and that the New Jersey Department of Transportation ("NJDOT") was not an indispensable party. Specifically, the Court was not convinced by DMJM's argument that if AMEC were allowed to proceed against NJDOT in state court and against DMJM in federal court, DMJM would be subject to inconsistent obligations. In an attempt to address DMJM's concerns, I suggested that the parties work together to fashion an order that would minimize any potential inconsistent obligations that DMJM contended could occur. The parties, however, could not agree on an order and none has been entered as of this date.

Thereafter, on November 6, 2006, Defendant DMJM filed the instant Motion for Reconsideration pursuant to Local Rule 7.1(i). DMJM argues that this Court should reconsider its October 23, 2006 Order to prevent manifest injustice. Specifically, DMJM contends that this Court should dismiss this matter because the actions in "State Court and Federal Court are virtually identical" and that if both actions "are allowed to proceed there will be an enormous duplication of evidence; months of trial testimony in both actions will be identical; and the risk to DMJM of inconsistent obligations will be enormous." DMJM Br. at 2.

Subsequently, on November 13, 2006, DMJM filed an Answer to AMEC's Complaint and set forth twenty affirmative defenses including: "*First Affirmative Defense:* The Court lacks jurisdiction over the controversy ... *Sixteenth Affirmative Defense:* The Complaint is barred as plaintiff has

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)
**(Cite as: 2007 WL 433328 (D.N.J.))**

failed to join necessary and indispensable parties. *Seventeenth Affirmative Defense:* Plaintiff has no right pursuant to statute or otherwise to recover attorney's fees ... *Twentieth Affirmative Defense:* DMJM reserves the right to rely on such other and further affirmative defenses as may be supported by facts to be determined through full and complete discovery to amend its answer to assert such other affirmative defenses." DMJM Ans. Thereafter, on December 4, 2006, AMEC filed a Motion to Strike the four affirmative defenses quoted above.

## II. Discussion

### A. *Motion for Reconsideration*

**\*2** Local Civil Rule 7.1(i) allows a party to seek reconsideration if there are "matter[s] or controlling decisions which the party believes the Judge ... has overlooked" within ten business days following the entry of the order or judgment on the original motion. *L. Civ. R.* 7.1(I). It is improper on a motion for reconsideration to "ask the Court to rethink what it had already thought through--rightly or wrongly." *Oritani Sav. & Loan Ass'n v.. Fidelity & Deposit Co.,* 744 F.Supp. 1311, 1314 (D.N.J.1990). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. *See Bermingham v. Sony Corp. of Am., Inc.,* 820 F.Supp. 834, 856 (D.N.J .1992), *aff'd,* 37 F.3d 1485 (3d Cir.1994); *Carteret Sav. Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989). Instead, Local Civil Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. *See Bryan v. Shah,* 351 F.Supp.2d 295, 297 (D.N.J.2005); *Bowers v. Nat'l Collegiate Athletic Assoc.,* 130 F.Supp.2d 610, 612 (D.N.J.2001). It is well-established that a court may only grant a motion for reconsideration if the movant can show: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's*

*Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999). In other words, the movant may address only matters that were presented to the Court, but were not considered by the Court in making the decision at issue. *United States v. Compaction Sys. Corp.,* 88 F.Supp.2d 339, 345 (D.N.J.1999). Because reconsideration is "an extraordinary remedy," it is "to be granted "very sparingly." *See NL Indus. Inc. v. Commercial Union Ins. Co.,* 935 F.Supp. 513, 516 (D.N.J.1996); *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J.1986). Indeed, a party asserting a difference of opinion with a court's decision should not bring a motion for reconsideration; instead, he or she should seek relief through the normal appellate process. *Chicosky v. Presbyterian Med. Ctr.,* 979 F.Supp. 316, 318 (D.N.J.1997); *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 163 (D.N.J.1988).

In the instant matter, DMJM argues that this Court should reconsider its October 23, 2006 Order denying DMJM's Motion to Dismiss. Specifically, DMJM contends that this Court must dismiss the action, or, in the alternative, enter DMJM's Proposed Order, to prevent manifest injustice including the duplication of litigation and DMJM's substantial risk of inconsistent obligations. DMJM Br. at 2. AMEC, on the other hand, argues that the instant Motion for Reconsideration should be denied because it merely reargues the issues that were already ruled upon. The Court agrees.

**\*3** To begin, DMJM argues that this Court must dismiss the instant matter to avoid duplicative litigation and inconsistent obligations. To support the contention that the Federal action will "mimic" the evidence and issues to be litigated in the State Court action, DMJM provides the Court with a chart comparing the allegations in the State Court complaint with allegations set forth in this action. However, the Court already considered and disposed of this exact issue. Indeed, at the October 23, 2006 hearing, the Court heard lengthy argument by the parties concerning the alleged similarities in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)
**(Cite as: 2007 WL 433328 (D.N.J.))**

both the state and federal court matters. Although I acknowledged the possibility for a substantial overlap in issues and discovery, I noted the absence of case law supporting DMJM's position that this constitutes a reasons to dismiss because judicial economy is not dispositive under a Rule 19 analysis; for those reasons, I denied DMJM's Motion to Dismiss. At this juncture, DMJM has not set forth anything else to substantiate the claim that manifest injustice will occur if the federal action is allowed to proceed. Indeed, DMJM has failed to do anything more than rehash the same arguments it advanced in its Motion to Dismiss. In addition, on January 5, 2007, the Honorable John J. Hughes entered a scheduling Order that accounted for various discovery issues and minimized the potential for duplicative litigation. Thus, DMJM's Motion for Reconsideration pursuant to Local R. 7.1(i) is denied.

In the alternative, DMJM argues that the Court should enter its Proposed Order to protect it from inconsistent obligations. The Court does not agree. The fact that the parties have failed to agree upon an Order is entirely independent of this Court's ruling on DMJM's Motion to Dismiss or its subsequent Motion for Reconsideration. Although I suggested that DMJM and AMEC work together to draft an order that would protect DMJM from potentially inconsistent obligations based on the state and federal actions, the failure of the parties to do so is not related to my ruling on DMJM's Motion to Dismiss. Indeed, I placed the burden on DMJM to come up with a scenario in which an inconsistent award could result and even noted that if none could be suggested, then perhaps that was proof that no such potentiality existed. Motion Tr. 75: 9-14, October 23, 2006 ("[Y]ou people can work on whatever you want to fashion that you think would deal with the issue that you raised, an inconsistent obligation. It may be when you start doing this, that you won't be able to come up with one because maybe there isn't one?"). Furthermore, what DMJM did propose by way of Order did not address the potential inconsistent obligations, but rather noted the following:

Whereas, DMJM would be left with a substantial

risk of incurring double, multiple or otherwise inconsistent obligations if AMEC litigates the same underlying claims with the same damages in the Federal Court Action against DMJM and against NJDOT in State Court Action ... IT IS HEREBY ORDERED THAT, AMEC shall not assert against DMUM and its subconsultants ... in the Federal Court Action the same or substantially similar claims that it is asserting against NJDOT in the State Court Action. It is Further ORDERED that, AMEC shall not seek to recover the same damages from DMJM and its subconsultants ... that it seeks to recover from NJDOT in the State Court Action ... [and] THAT any witness deposed by AMEC in the State Court Action shall not be deposed by AMEC in the Federal Court Action.

\*4 Hegarty Cert., ex. G.

Because the Proposed Order does not provide for specific scenarios as suggested by the Court and because the parties could not agree on any Order, this is not an appropriate matter for this Motion for Reconsideration.

Finally, the Court notes that AMEC's Opposition Brief contains an informal request for sanctions pursuant to Fed.R.Civ.P. 11 based on DMJM's filing of the instant Motion for Reconsideration. Rule 11(c)(1)(A) provides that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Substantively, rule 11 allows for "the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Spring Creek Holding Co., Inc. v. Keith,* 2006 WL 2715148 (D.N.J.2006) (quoting *Warren v. Guelker,* 29 F.3d

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)
**(Cite as: 2007 WL 433328 (D.N.J.))**

Page 4

1386, 1388 (9th Cir.1994)). Rule 11 sanctions are based on "an objective standard of reasonableness under the circumstances." *Martin v. Brown,* 63 F.3d 1252, 1264 (3d Cir.1995) (quoting *Landon v. Hunt,* 938 F.2d 450, 453 n. 3 (3d Cir.1991)). The imposition of Rule 11 sanctions is reserved for only exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous. *Ford Motor Co. v. Summit Motor Prods.,* 930 F.2d 277, 289 (3d Cir.1991) ( citation omitted). Therefore, in considering a motion to impose sanctions under Rule 11, the Court must determine that (1) the claims are objectively frivolous, and (2) the person who signed the pleadings or other papers should have been aware that they were frivolous. *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).

Although AMEC has not made a proper request for sanctions, this Court has considered the merits of the underlying motion and finds that the sanctions are not warranted. As discussed above, in this matter, DMJM argues that the Court should reconsider its October 23, 2006 Order pursuant to Local Civ. R. 7.1(i) to avoid manifest injustice. Although I do not agree with DMJM's arguments, I cannot find that DMJM's allegations were patently unmeritorious or frivolous. Indeed, although DMJM is not able to persuade this Court that it would be subject to inconsistent obligations, it is inconceivable that the proper filing of a Motion for Reconsideration in a complex case such as this should subject DMJM to sanctions. Thus, Rule 11 sanctions are not warranted here.

B. *Motion to Strike Affirmative Defenses*

In addition, on December 4, 2006, AMEC filed a Motion to Strike Affirmative Defenses pursuant to Fed.R.Civ.P. 12(f). Rule 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A motion to strike under Rule 12(f) eliminates insufficient defenses and saves the time and expense of litigating issues that ultimately would not affect the outcome of the case. *United States v. Geppert*

*Bros., Inc.,* 638 F.Supp. 996, 998 (E.D.Pa.1986) (citing *Narragansett Tribe v. Southern Rhode Island Land Dev. Corp.,* 418 F.Supp. 798, 801 (D.R.I .1976)). In general, a court possesses considerable discretion to dispose of a motion to strike under Rule 12(f). *River Road Dev. Corp. v. Carlson Corp.,* 1990 WL 69085 at *2 (E.D.Pa.1990). However, motions to strike are not favored and will typically be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.*

*5 In the instant matter, AMEC argues that this Court must strike the following four Affirmative Defenses: *"First Affirmative Defense:* The Court lacks jurisdiction over the controversy ... *Sixteenth Affirmative Defense:* The Complaint is barred as plaintiff has failed to join necessary and indispensable parties. *Seventeenth Affirmative Defense:* Plaintiff has no right pursuant to statute or otherwise to recover attorney's fees ... *Twentieth Affirmative Defense:* DMJM reserves the right to rely on such other and further affirmative defenses as may be supported by facts to be determined through full and complete discovery to amend its answer to assert such other affirmative defenses." Specifically, AMEC argues that Defenses 1 and 16 should be stricken because they were already decided by this Court and that Defenses 17 and 20 should be stricken because they are not proper affirmative defenses.

DMJM, on the other hand, contends that it has no objection to striking its First Affirmative Defense as long as it retains the ability to amend its Answer pending the outcome of discovery. In addition, DMJM argues that Defense 16 should not be stricken because discovery could reveal other necessary and indispensable parties. Finally, DMJM contends that Defenses 17 and 20 should not be stricken because AMEC has not established that it is prejudiced by these allegedly insufficient affirmative defenses.

To begin, in light of the fact that Defenses 1 and 16

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)
**(Cite as: 2007 WL 433328 (D.N.J.))**

were already decided by this Court, I will strike DMJM's First and Sixteenth Affirmative Defenses; however, I will permit DMJM the opportunity to amend should discovery reveal that jurisdiction is lacking or that there is a party subject to analysis under Fed.R.Civ.P. 19. In addition, the Court will strike DMJM's Twentieth Affirmative Defense for not setting forth a defense at all. According to Black's Law Dictionary, an affirmative defense is defined as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all allegations in the complaint are true." *Black's Law Dictionary* 430 (Seventh Ed.1999). DMJM's Twentieth Affirmative Defense, however, simply reserves the right to rely on other affirmative defenses that may be determined through discovery. As discussed above, this Court will permit DMJM to amend should discovery reveal the existence of new defenses. Thus, it is appropriate at this juncture to strike DMJM's Twentieth Defense.

Finally, however, the Court will not strike DMJM's Seventeenth Defense. The Court finds that DMJM's statement regarding attorney's fees presents an argument that could defeat Plaintiff's claim for fees. Thus, in the absence of any evidence that this defense is irrelevant or prejudicial, the Court will let this Seventeenth Defense stand.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration pursuant to L. Civ. R. 7.1(i) is denied. In addition, Plaintiff's Motion to Strike Affirmative Defenses is granted in part and denied in part. An appropriate order will follow.

Not Reported in F.Supp.2d, 2007 WL 433328 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4355037 (N.D.Ill.)
(Cite as: 2007 WL 4355037 (N.D.Ill.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
DE LAGE LANDEN FINANCIAL SERVICES,
INC., assignee of LBX Company, LLC dba LBX
Financial Services, Plaintiff,
v.
M.D.M. LEASING CORP., Robert M. Ryan, and
United Demolition, Inc., Defendants.
**No. 07 C 0045.**

Dec. 10, 2007.

Vincent Thomas Borst, Christian J. Jorgensen, Jennifer Elizabeth Gaylord, Askounis & Borst, P.C., Chicago, IL, for Plaintiff.

James M. Crowley, Christopher Scott Fowler, Stephen Joseph Brown, Crowley & Lamb, PC, Patrick David Lamb, Goldstein and Lamb, Chicago, IL, for Defendants.

***MEMORANDUM ORDER AND OPINION***
MARVIN E. ASPEN, District Judge.

**\*1** In the instant motion, Plaintiff De Lage Landen Financial Services, Inc. ("DLL") asks that we strike the affirmative defenses asserted by Defendants M.D.M. Leasing Corp., Robert M. Ryan and United Demolition, Inc (collectively, "Defendants"). For the reasons set forth below, we grant in part and deny in part DLL's motion to strike.

**BACKGROUND**

As discussed in our earlier orders, DLL pursues two complaints against Defendants. In both cases, DLL alleges that Defendants entered into an April 12, 2006 Loan and Security Agreement ("Agreement") with LBX Company, LLC (d/b/a LBX Financial Services) ("LBX"), for the purchase of certain industrial equipment and then subsequently defaulted under the terms of the Agreement by failing to make payments. In the first case, filed January 4,

2007 ("the Replevin Complaint"), DLL alleges that, as LBX's assignee, it continues to hold a first priority secured interest in the equipment covered by the Agreement and has demanded that Defendants surrender that equipment. (Replevin Compl. ¶¶ 9- 12.) In light of Defendants' alleged refusal to comply, DLL filed an action for replevin and monetary damages. (*Id.* ¶¶ 12-14.) In the second case, filed February 27, 2007 (the "Deficiency Complaint"), DLL seeks damages under breach of contract and breach of guaranty theories as a result of Defendants' alleged default.

DLL presently challenges the affirmative defenses asserted by Defendants in response to the two complaints. DLL argues that Defendants are barred by the express terms of the Agreement from asserting any affirmative defenses, including breaches of warranty. DLL also contends that Defendants cannot challenge DLL's standing as an affirmative defense. Finally, DLL asks that we strike the second and third affirmative defenses to the Replevin Complaint because Defendants raised the same issues in an earlier motion to dismiss, which we denied on May 21, 2007.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(c) requires parties to set forth any affirmative defenses in their responsive pleadings and specifically lists nineteen defenses that must be pled "affirmatively." A motion to strike pursuant to Rule 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Con naught Corp.,* 782 F.Supp. 1240, 1245 (N.D.Ill.1991). Motions to strike affirmative defenses are generally disfavored because of their potential to delay proceedings. *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975) ( citations omitted). Thus, such a motion should not be granted unless the defense is "patently defective." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 833 F.2d 1286, 1294 (7th

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4355037 (N.D.Ill.)
**(Cite as: 2007 WL 4355037 (N.D.Ill.))**

Page 2

Cir.1989). Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case. *Heller Fin.,* 833 F.2d at 1294.

**\*2** This Court engages in a three-step analysis when assessing the sufficiency of an affirmative defense. *Reis Robotics USA, Inc. v. Concept Indus., Inc.,* 462 F.Supp.2d 897, 905 (N.D.Ill.2006); *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.1982). First, we determine whether the matter is appropriately pled as an affirmative defense. "Only matters that deserve a clear 'no' answer will be stricken to make the pleadings more concise." *Bobbitt,* 532 F.Supp. at 737. Second, we consider whether the defense has been adequately pled pursuant to the requirements of Federal Rules of Civil Procedure 8 and 9. *Id.; Reis Robotics USA, Inc.,* 462 F.Supp.2d at 905. If a party fails to meet these basic pleading requirements, we should dismiss the defense with leave to amend. Finally, we evaluate the sufficiency of the defense pursuant to the standard followed in assessing Rule 12(b)(6) motions. *Reis Robotics USA, Inc.,* 462 F.Supp.2d at 905; *Bobbitt,* 532 F.Supp. at 737. Ultimately, a defense should be stricken only if the defendant cannot prove any set of facts in support of the defense that would defeat the complaint. *Reis Robotics USA, Inc.,* 462 F.Supp.2d at 905; *Bobbitt,* 532 F.Supp. at 737; *see also Surface Shields, Inc. v. Poly-Tak Prot. Sys. .,* 213 F.R.D. 307, 308 (2003).

## ANALYSIS

### A. Defendants' Waiver of Affirmative Defenses

DLL contends that, pursuant to the Agreement, Defendants have waived their right to assert any defenses against DLL with respect to either complaint. (Mot. at 4.) DLL also specifically argues that the Agreement precludes Defendants from raising affirmative defenses based on alleged breaches of implied warranties. (*Id.* at 5-6.) In support of these arguments, DLL cites to paragraphs 6 and 17 of the Agreement and quotes the language found therein. According to DLL, the Agreement unambiguously states that "the right of the assignees ... shall not be subject to any defense, set-off or coun-

terclaim which the Borrower may have against Lender." (*Id.* at 4.) DLL represents that the Agreement further provides that "Lender has not and does not make any representations and/or warranty, express or implied, with respect to [the equipment's] condition, merchantability, suitability, capacity or fitness for any particular purpose." (*Id.* at 6.) DLL asks that we strike any and all of Defendants' affirmative defenses based on these provisions. (*Id.* at 4.)

Although Defendants respond that DLL has "put the cart before the horse" by relying on these terms, courts routinely review and interpret contracts when deciding motions under a Rule 12(b)(6) standard. Indeed, contracts attached to a complaint "are considered part of the pleadings" and may be evaluated for purposes of motions to dismiss and, thus, motions to strike. *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 466 (7th Cir.2007); Fed.R.Civ.P. 10(c); *see, e.g., Beanstalk Group, Inc. v. AM Gen'l Corp.,* 283 F.3d 856, 858 (7th Cir.2002); *Guitar Ctr. Stores, Inc. v. 7250 S. Cicero Equities, LLC,* No. 07 C 4227, 2007 WL 3374592, at \*3 (N.D.Ill. Nov.8, 2007) (interpreting lease agreement to determine whether it barred plaintiff's claim for consequential damages); *MB F in. Bank, N.A. v. P lanet A irways, Inc.,* No 04 C 0893, 2005 WL 1189597, at \*2-3 (N.D.Ill. May 4, 2005) (interpreting promissory note and loan agreement, concluding that guarantors waived claims for fraudulent misrepresentation and breach of duty of good faith, and holding that contracts precluded affirmative defense of failure to mitigate). "The interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage." *Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp.,* 368 B.R. 679, 688-89 (N.D.Ill.2006); *Guitar Ctr. Stores, Inc.,* 2007 WL 3374592, at \*3 ("At a minimum, there must at least be some ambiguity in the language of the contract before determining that its meaning cannot be resolved on a motion to dismiss."). Because DLL attached the Agreement and guaranties at issue to the Deficiency and Replevin

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 4355037 (N.D.Ill.)
**(Cite as: 2007 WL 4355037 (N.D.Ill.))**

Page 3

Complaints, we may theoretically consider them as we address the present motion.

*3 As a practical matter, however, we cannot evaluate the contracts simply because we cannot read them. The copies of the pertinent documents attached to the Complaints are almost entirely illegible. Even if we could make out the critical paragraphs cited by DLL, we are unable to review them in the context of the entire Agreement. [FN1] Accordingly, we are unable to determine whether the Agreement is unambiguous and, if so, whether its provisions bar Defendants from asserting affirmative defenses as a matter of law. Because we cannot review the language of the Agreement for ourselves, we deny the motion without prejudice.

> FN1. We also observe that the second page of the Agreement appears to be unsigned.

### B. Standing as an Affirmative Defense

While Defendants may continue to assert affirmative defenses generally at this juncture, we agree with DLL that Defendants cannot include standing among them. Because a plaintiff must plead and ultimately prove standing, lack of standing "is not an affirmative defense under federal law." *Native Am. Arts, Inc. v. The Waldron Corp.,* 253 F.Supp.2d 1041, 1045 (N.D.Ill.2003); *see also Huthwaite, Inc. v. Randstand Gen'l Partner (US), L.L.C.,* No. 06 C 1548, 2006 WL 3065470, at *8 (N.D.Ill. Oct.24, 2006) (striking affirmative defense of standing with no opportunity to replead). "A challenge to standing would be more properly brought on a motion to dismiss." *Huthwaite, Inc.,* 2006 WL 3065470, at *8; *Native Am. Arts, Inc.,* 253 F.Supp.2d at 1045. Although we denied Defendants' motion to dismiss on May 21, 2007, the burden remains with DLL to prove the allegations that it has standing to pursue this action.

### C. Defenses Particular to the Replevin Action

In their answer to the Replevin Complaint, Defendants asserted two defenses, challenging DLL's com-

pliance with the strict requirements of the Illinois replevin procedure and possessory interest in the equipment. (Ans. to Replevin Compl. ¶¶ 20-23, 27-29.) DLL contends that we must strike these second and third defenses to the Replevin Complaint because Defendants unsuccessfully raised them in the earlier motion to dismiss. (Mot. at 6-7.) Contrary to DLL's assertion, our May 21 Order did not evaluate the merits of these defenses or conclude that they were "patently defective." *Heller Fin.,* 833 F.2d at 1294. Our May 21 Order briefly addressed DLL's Replevin Complaint under the relatively liberal federal pleading standards. We held only that DLL's allegations, particularly with respect to standing, were sufficient to state a claim and survive the Rule 12(b)(6) motion. Because we did not substantively evaluate Defendants' defenses, given the necessary focus on DLL's allegations, we will not prohibit Defendants from pursuing these second and third defenses as the litigation proceeds. These defenses are not impertinent or redundant such as to warrant striking them under Rule 12(f). *See Van Schouwen,* 782 F.Supp. at 1245.

### CONCLUSION

As set forth above, we grant in part and deny in part DLL's Combined Motion to Strike Defendants' Affirmative Defenses. Specifically, we strike the first affirmative defense (lack of standing) from both the Replevin Complaint and the Deficiency Complaint. DLL's motion is denied in all other respects. It is so ordered.

Not Reported in F.Supp.2d, 2007 WL 4355037 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 318825 (W.D.Pa.)
**(Cite as: 2006 WL 318825 (W.D.Pa.))**

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
W.D. Pennsylvania.
DIRECTV, INC., Plaintiff,
v.
Bruce FIGLER, Defendant.
**No. Civ.A. 04-773.**

Feb. 9, 2006.
Peter V. Marcoline, Jr., Pittsburgh, PA, for Plaintiff.

John W. Gibson, Pittsburgh, PA, for Defendant.

*MEMORANDUM ORDER*
HAY, Magistrate J.

*1 Presently before the Court is Plaintiff's Motion to Strike Affirmative Defenses and Extraneous Material Attached to Defendant's Answer (doc. 32) filed pursuant to Fed.R.Civ.P. 12(b)(6) [FN1] and 12(f). [FN2] Although Defendant has had several opportunities to respond to the motion, he did not do so. [FN3] Accordingly, the motion is deemed unopposed.

FN1. Rule 12(b)(6) provides as follows:
(b) How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6)failure to state a claim upon which relief can be granted.

FN2. Rule 12(f) provides as follows:
(f) Motion to Strike. Upon motion made by a party before responding to a pleading or ... upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter.

FN3. On June 13, 2005, Plaintiff filed a Notice of Defendant's failure to respond to the motion, asking the Court to deem plaintiff's motion unopposed. Doc. 35. As well, pursuant to this Court's standing Order on Motions Practice issued on July 26, 2005, Defendant was on notice that a response to any motion is due within thirty days and that no separate briefing Order would issue. Doc. 39. Finally, this Court issued an Order on January 5, 2006, establishing a new deadline of January 31, 2006, for Defendant's response. Doc. 54.

Rules 8(c) and 12(b) of the Federal Rules of Civil Procedure obligate a pleader to assert affirmative defenses if appropriate or they will be deemed waived. *See Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 461 F.2d 66, 74 (3d Cir.1972), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972). Affirmative defenses must adhere to Fed.R.Civ.P. 8(a)(2), which requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Generally, motions to strike under Rule 12(f) are not favored by federal courts and will be denied unless the allegations have no possible relation to the controversy or if they confuse the issues. *Tonka Corp. v. Rose Art Industries, Inc.,* 836 F.Supp. 200, 217 (D.N.J.1993). However, a district court may strike affirmative defense pleadings in at least three circumstances:
A three-part test determines the fate of an affirmative defense subject to a motion to strike. (1) The matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Rules 8 and 9; and (3) the matter must withstand a Rule 12(b)6 challenge--that is, if the defendant could prove no set of facts in support of the affirmative

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 318825 (W.D.Pa.)
**(Cite as: 2006 WL 318825 (W.D.Pa.))**

defense that would defeat the complaint, the defense must be stricken as legally inadequate. *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.,* 213 F.R.D. 307, 308 (N.D.Ill.2003) *(quoting R enalds v. S.R.G. R estaurant Group,* 119 F.Supp.2d 800, 802-03 (N.D.Ill.2000)). Moreover, affirmative defenses that are merely bare bones conclusory allegations do not meet the standards of Rule 8 a nd must be stricken. *Id.* As well, denials are not affirmative defenses. *See* Fed.R.Civ.P. Rule 8. Lastly, as noted, Rule 12(f) permits the Court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In determining whether to grant a motion to strike, district courts possess "considerable discretion" under Rule 12(f). *River Road Development Corp. v. Carlson Corporation-Northeast,* 1990 WL 69085, *2 (E.D.Pa.1990) *(quoted in Tonka Corp.,* 836 F.Supp. at 217).

In his Answer, Defendant set forth what can only be described as a laundry list of thirty-two affirmative defenses, many of which are fairly boiler-plate:

1. Plaintiff's claims are barred by doctrine of accord and satisfaction.

2. Plaintiff's claims are barred by the doctrine of assumption of the risk.

3. Plaintiff's claims are barred due to its contributory negligence.

4. Plaintiff's claims are barred by the doctrine of estoppel.

*2 5. Plaintiff's claims are barred due to a failure of consideration.

6. Plaintiff's claims are barred due to its own fraud.

7. Plaintiff's claims are barred due to the illegality of the claimed actions or methods involved in its complaint.

8. Plaintiff's claim is barred by reason of its failure to join this defendant in a prior action [*sic* ] based upon the identical causes of action asserted herein.

9. Plaintiffs' [*sic* ] claim is unenforceable since there was never a legal relationship or contract between the parties.

10. Plaintiffs' [*sic* ] Complaint is barred for lack of jurisdiction.

11. Plaintiffs' [*sic* ] Complaint is barred since venue in improper.

12. Plaintiffs' [*sic* ] Complaint is barred for lack of appropriate service of process.

13. Plaintiffs' [*sic* ] Complaint is barred as unconscionable.

14. Plaintiffs' [*sic* ] Complaint is barred by its prior license to Defendant.

15. Plaintiffs' [*sic* ] Complaint fails to state a legally recognizable cause of action.

16. Defendant hereby reserves the right to add, supplement, modify, change or amend any and all of its Affirmative Defenses as the facts and circumstances become known through further discovery and/or investigation.

17. Defendant had a legitimate purpose and use for the devices at issue in Plaintiff's Complaint.

18. Plaintiff's Complaint fails to State a Claim for which Relief Can be Granted.

19. Defendant is not in possession of any devices alleged in Plaintiff's Complaint.

20. Plaintiff's claims under section 2512 fails [*sic* ] to state a claim as a matter of law.

21. Plaintiff's claims are barred by the statute of limitations applicable to its claims.

22. Plaintiff's equitable claims are barred by the doctrine of unclean hands, the plaintiff having delayed distribution of its "P-4" access card and failing to implement security measures when such measures were available to it several years prior to filing this action.

23. Defendant did not intercept, exhibit or otherwise assist in the unauthorized interception or exhibition of Satellite Television transmitted by Directv within the meaning of any statute prohibiting interception or exhibition of communications or cable satellite programming.

24. Plaintiff is not a person aggrieved within the meaning of any provision of 47 U.S.C. § 605.

25. Plaintiff is not entitled to damages as alleged in Plaintiff's Complaint.

26. Plaintiff is not entitled to pre-judgment interest on any of the claims in Plaintiff's Com-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 318825 (W.D.Pa.)
**(Cite as: 2006 WL 318825 (W.D.Pa.))**

plaint.

27. Defendant did not intercept, endeavor to intercept or procure other persons to intercept electronic communications from Directv.

28. Plaintiff is required to prove actual damages suffered as a result of Defendant's alleged conduct.

29. Plaintiff is not a person whose electronic communications have been intercepted, disclosed and/or intentionally used.

30. Defendant did not manufacture, assemble or modify any devices to assist in the unauthorized decryption of Satellite Programming, etc.

*3 31. Defendant did not violate 18 Pa.C.S.A. § 910.

32. This Honorable Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. [FN4]

> FN4. In his Answer (doc. 31), Defendant mis-numbered the affirmative defenses, omitting numbers 23 and 24. This Court has replicated the list of affirmative defenses and properly numbered them here.

The Plaintiff has moved to strike all but affirmative defenses 10, 16 and 19. Even a cursory review of the challenged affirmative defenses reveals that they constitute denials and not affirmative defenses, and/or have either been waived or do not meet the requirements of Rules 8 and 9, and/or are otherwise legally inadequate. For example, Defendant has plead the affirmative defenses of assumption of the risk and contributory negligence, which are cognizable defenses to a tort action. However, inasmuch as Plaintiff has not brought a tort action against the Defendant these defenses have no possible relation to the controversy at hand. As another example, Defendant asserts improper venue and lack of appropriate service of process. These defenses are waived if omitted from a Rule 12 motion in the circumstances described in Rule 12(g). Fed.R.Civ.P. 12(h)(1). Here, Defendant filed a motion to dismiss prior to filing his Answer and did not raise these defenses in that motion; hence, they are waived.

This Court finds that the following challenged affirmative defenses are either denials and, therefore, not proper affirmative defenses, and/or have been waived or do not meet the requirements of Rules 8 and 9, and/or are otherwise legally inadequate: 1-9, 11-14, 17-20, and 22-32. Accordingly, the Plaintiff's motion to strike is GRANTED to the extent that affirmative defenses 1-9, 11-14, 17-20, and 22-32 are hereby STRICKEN. Plaintiff's motion is DENIED as to affirmative defenses 15, 18 and 21. Defendant shall have until February 21, 2006, to properly plead any affirmative defenses he wishes to raise.

Additionally, attached to the Defendant's Answer are two documents from litigation involving Directv and other defendants, not including the defendant in this case, filed in the Eastern District of Louisiana: (1) Directv's supplemental responses to interrogatories and (2) a memorandum order concerning a motion by Directv to maintain confidentiality of certain of its discovery responses. Inasmuch as the Defendant has not demonstrated the relationship, if any, of these pleadings to the controversy at issue here, these documents are STRICKEN pursuant to Rule 12(f) as immaterial.

So ORDERED.

Not Reported in F.Supp.2d, 2006 WL 318825 (W.D.Pa.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT D

# Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31355255 (D.Del.)
**(Cite as: 2002 WL 31355255 (D.Del.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
FRANCE TELECOM S.A., Telediffusion de
France S.A., and U.S. Philips Corp.,
Plaintiffs,
v.
NOVELL, INC., Defendant.
**No. 102-437-GMS.**

Oct. 17, 2002.

MEMORANDUM AND ORDER
SLEET, District J.

## I. INTRODUCTION

**\*1** On May 17, 2002, the plaintiffs, France Telecom S.A. ("France Telecom"), TéléDiffusion de France S.A. ("TDF"), and U.S. Philips Corp. ("Philips") (collectively "the plaintiffs") filed this action alleging patent infringement of a computer software system for accreditating message signatures. The defendant, Novell, Inc. ("Novell"), filed its Answer and Counterclaim on July 16, 2002 (D.I.7). In its Answer, the defendant asserts ten affirmative defenses, including the affirmative defense of "unclean hands." The plaintiffs move to strike this fourth affirmative defense (D.I.8), and the defendant subsequently moved for leave to file an amended Answer (D.I.12). For the following reasons, the court will deny the plaintiffs' motion and grant the defendant's motion.

## II. DISCUSSION

A. Defendant's Motion for Leave to Amend Its Answer

The defendant moves to amend its Answer pursuant to Federal Rule of Civil Procedure 15(a). Rule 15(a) provides that a party may amend its complaint "by leave of court ... and leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Leave should be freely granted unless there is an apparent or declared reason for denial, *e.g.,* undue delay, bad faith, or dilatory motive on the part of the movant; undue prejudice to the opposing party; or futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). Leave to amend is particularly warranted when pleadings lack the requisite factual specificity for a particular cause of action. *See District Council 47 v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986). Indeed, "[t]he clearest cases for leave to amend are correction of an insufficient claim or defense and amplification of previously alleged claims or defenses." *U.S. v. Teeven,* 1992 WL 683682, at \*7 (D.Del. Oct. 27, 1992).

The plaintiffs object to Novell's motion to amend its Answer because, they argue, it is futile, as the amended Answer would remain subject to a motion to strike due to redundancy. For the reasons set out in Part B below, the court finds the two defenses are not redundant, and therefore the amendment is not futile.

Nor would the amendment prejudice the plaintiffs by complicating discovery and confusing issues at trial, as they assert. Indeed, as the plaintiffs imply in their briefs, the more particularized amended Answer will benefit the parties by providing notice of the nature and grounds of the defense and by narrowing discovery and preparation efforts. [FN1] None of the other reasons for denial, such as undue delay, bad faith, or dilatory motive on Novell's part, has been alleged, and the court finds no evidence of such. The defendant's motion for leave to amend the Answer is, therefore, granted.

> FN1. Referring to the defendant's unamended Answer, the plaintiffs asserted: "The unclean hands defense will prejudice plaintiffs if it remains in its present form .... The undefined nature of defendant's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31355255 (D.Del.)
(Cite as: 2002 WL 31355255 (D.Del.))

current pleading could permit defendant to change the theory of its defense, without putting plaintiffs on notice that this has occurred .... Defendant could also utilize the broad and undefined nature of its 'unclean hands' defense to rationalize 'fishing expeditions' on matters that would otherwise not properly be subject to discovery." Plaintiffs' Opening Brief in Support of Plaintiff's Motion to Strike Defendant's Fourth Affirmative Defense of Unclean Hands at 7-8. These potential problems will be avoided by the amended Answer.

**B. Plaintiffs' Motion to Strike Defendant's Fourth Affirmative Defense of Unclean Hands**

The plaintiffs move to strike the defendant's fourth affirmative defense of unclean hands pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant ... matter." FED. R. CIV. P. 12(f). Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 697 F.Supp. 1360, 1362 (D.Del.1988). When ruling on such a motion, "the [c]ourt must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law."

**\*2** In its unamended form, the defendant's fourth affirmative defense reads: "The Complaint and the relief requested therein are barred, in whole or in part, by the doctrine of unclean hands." The plaintiffs contend this articulation is insufficient and redundant. They allege it is insufficient because it provides no notice of the nature of the unclean hands defense and because it does not detail the relationship between the plaintiffs' alleged inequitable conduct and the plaintiffs' claim. [FN2] Even if amended, the plaintiffs object, the defense is redundant, because Novell also asserts the affirmative defense of inequitable conduct. The plaintiffs maintain that these two affirmative defenses share identical elements and standards of proof. If one fails, the plaintiffs contend, so must the other. The court will now address these objections in turn.

> FN2. Although the plaintiffs seem to have withdrawn the insufficiency objections following the defendant's motion for leave to amend the Answer, the court will address the insufficiency objection *vis-a-vis* the amended Answer.

**1. Sufficiency per Rule 8**

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain" statement of a claim or defense. FED. R. CIV. P. 8(a) and (b). It is well settled that the Federal Rules intend a liberal pleading standard. *See Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"). Indeed, Rule 8 expressly mandates that "[e]ach averment of a pleading shall be simple, concise, and direct." FED. R. CIV. P. 8(e).

The defendant's fourth affirmative defense, as amended, comprises six short paragraphs stating the basis for the unclean hands defense, including the context of the alleged misconduct. This context includes the title, author, and publication date of the reference allegedly withheld by the plaintiffs from the Patent and Trademark Office ("PTO"). The amended affirmative defense clearly meets the threshold sufficiency requirements of Rule 8.

**2. Sufficiency Per Rule 9**

Rule 9 of the Federal Rules of Civil Procedure requires that all pleadings of fraud or mistake "shall be stated with particularity." FED. R. CIV. P. 9(b). Such averments, however, remain subject to the liberal pleading requirements of Rule 8. *See In re Westinghouse Sec. Litig.,* 90 F.3d 696, 703 (3d Cir.1996); *see generally* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1281, at 520-21

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(1990) (pleading with particularity under Rule 9(b) should be done consistently with the general philosophy of Rule 8); 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE P 8.13, at 8-58 (2d ed.1995) (the mandate of Rule 8 applies "even where the Rules command particularity, as in the pleading of fraud under Rule 9(b)") (footnote omitted). In the context of alleged inequitable conduct before the PTO during a patent prosecution, "pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)." *EMC Corp. v. Storage Tech. Corp.,* 921 F.Supp. 1261, 1263 (D.Del.1996).

**\*3** To the extent the defendant's fourth affirmative defense involves fraud and is subject to the particularity requirement of Rule 9(b), this requirement also is satisfied by Novell's amendment. As noted above, the amended Answer discloses the title, author, and publication date of the relevant prior art allegedly withheld from the PTO. Novell's amended fourth affirmative defense suffices "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings" as Rule 9 requires. 5 WRIGHT & MILLER § 1296 (1990).

3. Nexus between the Unclean Hands Defense and Plaintiffs' Claim

The defense of unclean hands requires "an immediate and necessary relation" between the plaintiff's alleged misconduct and the equity sought by that party. *See Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933) ( "[Courts] apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."). Indeed, in the Third Circuit, this nexus is "the primary principle guiding application of the unclean hands doctrine." *New Valley Corp. v. Corporate Prop. Assocs.* 2 & 3, 181 F.3d 517, 525 (3d Cir.1999).

The plaintiffs object to Novell's unamended fourth

affirmative defense because, they argue, it fails to disclose any relationship between the alleged inequitable conduct constituting unclean hands, and the patent infringement claim at issue. The amended fourth affirmative defense, however, makes clear this relationship. Novell alleges the defendants knowingly, and with an intent to deceive, failed to disclose relevant and material prior art to the Patent and Trademark Office. If such conduct constitutes unclean hands, it would render the patent unenforceable, and the present infringement action necessarily would fail. *See generally Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240 (1933). The relationship between the alleged inequitable conduct on the part of the plaintiffs and the equity sought by them has been made sufficiently clear by Novell's amended Answer.

4. Redundancy

The plaintiffs object to Novell's fourth affirmative defense of unclean hands as redundant because it is indistinguishable from Novell's third affirmative defense of inequitable conduct. The elements and standards of proof for the two defenses are identical, the plaintiffs contend, in the context of non-disclosure of material prior art to the PTO during the procurement of a patent.

The court is unconvinced that the two defenses are "identical," even in the context of non-disclosure to the PTO. The Federal Circuit has defined inequitable conduct as the "failure to disclose material information, or submission of false material information, with an intent to deceive." *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 872 (Fed.Cir.1988). Unclean hands, however, remains a broader defense less amenable to a particular checklist of elements. The doctrine of unclean hands **\*4** necessarily gives wide range to the equity court's use of discretion .... It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Accordingly one's misconduct need not necessarily have been of such a nature as to be pun-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim.

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co* ., 324 U.S. 806, 815 (1945) (citation omitted). Although the two affirmative defenses in the instant case may well rest on the same facts and may result in identical outcomes, the defenses themselves are not necessarily identical. Particularly at this early stage in the proceedings and given the disfavor with which motions to strike affirmative defenses are received, the court will allow the fourth affirmative defense to remain, to succeed or fail as it may in the remaining litigation.

III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The plaintiffs' motion to strike the defendant's fourth affirmative defense of unclean hands (D.I.8) is DENIED.

2. The defendant's motion for leave to amend its Answer (D.I.12) is GRANTED.

3. The defendant shall file its amended Answer within 10 days of the date of this order.

Not Reported in F.Supp.2d, 2002 WL 31355255 (D.Del.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# EXHIBIT E

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
OCEAN ATLANTIC WOODLAND CORPORA-
TION, a Virginia Corporation, Plaintiff,
v.
DRH CAMBRIDGE HOMES, INC. a California
Company, Cowhey, Gudmundson, Leder,
Ltd., an Illinois Corporation, and Pugsley & Lahaie,
Ltd., an Illinois
Corporation, Defendants.
**No. 02 C 2523.**

March 31, 2003.

*MEMORANDUM OPINION AND ORDER*
GUZMAN, J.

**\*1** Plaintiff, Ocean Atlantic Woodland Corp.
("Ocean Atlantic Woodland") brought this action
against defendants DRH Cambridge Homes, Inc.
("Cambridge"), Cowhey, Gudmundson, Leder, Ltd.
("Cowhey"), and Pugsley & LaHaie, Ltd.
("Pugsley") for copyright infringement arising un-
der the Copyright Act of 1976, 17 U.S.C. §§ 101 *et
seq.,* for unfair competition and deceptive trade
practices under the Illinois Uniform Deceptive
Trade Practices Act, 815 ILL. COMP. STAT. 510/1
*et seq.,* and the Consumer Fraud and Deceptive
Business Practices Act, 815 ILL. COMP. STAT.
505/1 *et seq.,* for false designation of origin under
15 U.S.C. § 1125(a), and for conversion and unjust
enrichment. Defendants Cambridge and Pugsley
have raised Affirmative Defenses I-XIII, defendant
Cowhey has raised Affirmative Defenses I-XII, and
before the Court is Ocean Atlantic Woodland's mo-
tion to strike the affirmative defenses raised by de-
fendants pursuant to Federal Rule of Civil Proced-
ure ("Rule") 12(f). For the reasons provided in this
Memorandum Opinion and Order, the motion is
granted in part and denied in part.

*BACKGROUND FACTS* [FN1]
FN1. Though defendants each filed a sep-
arate Answer and Affirmative Defenses, all
three defendants filed a joint response to
plaintiff's motion to strike the affirmative
defenses and the issues and facts in the
joint response were essentially the same
and taken from Defendant Cambridge's
Answer and Affirmative Defenses. There-
fore, the Court will use Cambridge's An-
swer and Affirmative Defenses for the fac-
tual background.

Ocean Atlantic Woodland's Development History
of the Byzantio/Arnhold Property

On August 6, 1997, Ocean Atlantic Woodland, a
Virginia real estate developer, entered into a con-
tract of purchase and sale for two adjoining farms
(the "Byzantio/Amhold Property" or the "Property")
respectively owned by Byzantio, L.L.C.
("Byzantio") and Elda Arnhold ("Arnhold") located
in unincorporated Will County, Illinois. (Def. DRH
Cambridge Homes' Verified Answer ¶ 8A ("Def.
Cambridge's Answer").) The Byzantio/Arnhold
Property was to be developed into a residential sub-
division incorporated into the neighboring Village
of Plainfield (the "Village"). (*Id.*)

To assist in its development efforts, Ocean Atlantic
Woodland retained the engineering firm of Roake
& Associates ("Roake") (who had previously been
preparing a plan for the Byzantio/Arnhold Property
for another developer) and the Lannert Group
("Lannert") to create a preliminary plat, preliminary
engineering and landscape plans, and some addi-
tional plans to be used in the rezoning and annexa-
tion of the Byzantio/Arnhold Property (collectively,
the "Roake/Lannert plans"). (Def. Cambridge's An-
swer ¶¶ 11-13.) In November 1997, Ocean Atlantic
Woodland began submitting development proposals
(which included preliminary versions of the Roake/
Lannert plans) to the Village for its review and sug-
gested revisions. (Def. Cambridge's Answer ¶ 14.)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 2

On August 17, 1998, the Village executed an agreement to annex the Byzantio/Arnhold Property to the Village for the purpose of developing that property (the "Annexation Agreement"). (*Id.* ¶ 16.) A preliminary plat was attached to the Annexation Agreement as Exhibit B and a landscape plan was attached as Exhibit B-1. (*Id.*)

In November 1999, Arnhold and Byzantio filed a lawsuit against Ocean Atlantic Woodland seeking to terminate its contract to sell the Byzantio/Arnhold Property to Ocean Atlantic Woodland. (Def. Cambridge's Answer ¶ 20.) On October 26, 2000, the parties entered into a settlement agreement to proceed with the purchase and sale of the Byzantio/Arnhold Property by January 25, 2001 ("Settlement Agreement"). (*Id.* ¶ 21.) However, Ocean Atlantic Woodland disastrously did not close by January 25, 2001 and thus failed to follow the terms of the Settlement Agreement. (*Id.*) Arnhold and Byzantio consequently terminated the contract. (*Id.* ¶ 22.) In response, Ocean Atlantic moved on February 5, 2001 to enforce the Settlement Agreement. (*Id.*) On February 28, 2001, the United States District Court for the Northern District of Illinois denied Ocean Atlantic Woodland's motion and ruled that the corporation had breached the Settlement Agreement and thus the Agreement was terminated and, on March 21, 2002, the Seventh Circuit affirmed the district court ruling. [FN2] (*Id.* ¶¶ 23-24.) Pursuant to these rulings, Ocean Atlantic Woodland lost any and all rights to purchase the Byzantio/Arnhold Property. (*Id.* at ¶ ¶ 6-7.) *See Arnhold v. Ocean Atl. Woodland Corp.*, 132 F.Supp.2d 662, 674 (N.D.Ill.2001), *aff'd*, 284 F.3d 693, 710 (7th Cir.2002).

> FN2. *See Arnhold v. Ocean Atl. Woodland Corp.*, 132 F.Supp.2d 662 (N.D.Ill.2001) ("Arnhold I"), *aff'd*, 284 F.3d 693 (7th Cir.2002) ( "Arnhold II").

Cambridge's Purchase and Proposed Development of the Byzantio/Arnhold Property

*2 On December 29, 2000, Ocean Atlantic Wood-

land had entered into a contract with Cambridge, a California developer, for the sale of a portion of the Byzantio/Arnhold Property contingent on Ocean Atlantic Woodland's acquisition of the property. (Def. Cambridge's Answer ¶ 25.) During this time, Cambridge received from Ocean Atlantic Woodland certain design and engineering documents related to the proposed development for their review. (Def. Cambridge's Answer ¶ 26.) However, after the Ocean Atlantic's failure to acquire the property, Cambridge independently entered into an agreement on April 12, 2001 to acquire the property and ultimately purchased the Byzantio/Arnhold Property on July 19, 2001 with the intent to develop the land for residential use. (*Id.* ¶¶ 28-29.) Cambridge then hired Cowhey, an Illinois engineering firm, and Pugsley, an Illinois landscape architecture firm, for the engineering plans and plats of their development of the Arnhold/Byzantio Property. (*See id.* ¶¶ 32-33; Def. Cambridge's Affirmative Defenses ¶¶ 20-24.) On November 14, 2001 and October 21, 2001, Cambridge submitted a preliminary engineering plan and development design and engineering plan to the Village, listing Pugsley and Cowhey as the drafters. (Def. Cambridge's Answer ¶¶ 37-38.)

Ocean Atlantic Woodland's Acquisition of the Roake/Lannert Plans' Copyright

In February 2002, Roake and Lannert assigned to Ocean Atlantic Woodland all right, title, and interest, including the copyright, in the plans for the Byzantio/Arnhold Property (landscape plans, development design, engineering plans and schematics). (Def. Cambridge's Answer ¶ 30.) Also in February 2002, Ocean Atlantic Woodland registered the engineering and landscape plans it was assigned by Roake and Lannert with the Copyright Office. (Def. Cambridge's Answer ¶ 30.)

*DISCUSSION*

In a motion to strike, pursuant to Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A movant bears the burden of demonstrating

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 3

that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration and unduly prejudicial." *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.,* 2 F.Supp.2d 1028, 1033 (N.D.Ill.1998).

Courts in this district, following *Bobbitt v. Victorian House, Inc.,* have traditionally utilized a three-part inquiry when examining affirmative defenses subject to a motion to strike: (1) whether the matter is appropriately pleaded as an affirmative defense--only matters that deserve a clear "no" answer will be stricken to make the pleadings more concise; (2) if it is adequately pleaded under the requirements of Rules 8 and 9--if inadequately pleaded, the affirmative defense will be dismissed without prejudice to enable defendants to correct that technical deficiency; (3) whether the affirmative defense meets the Rule 12(b)(6) standard--if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter will be stricken as legally insufficient. 532 F.Supp. 734, 737 (N.D.Ill.1982); *see H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.,* No. 99 C 5437, 2002 WL 31018302, at *2-3 (N.D.Ill. Sep. 9, 2002); *Ocean Atl. Dev. Corp. v. Willow Tree Farm, L.L.C.,* No. 01 C 5014, 2002 WL 485387, at *2 (N.D.Ill. Mar. 29, 2002).

*3 First, Rule 8(c) lists nineteen named affirmative defenses but the list is not considered exhaustive and includes a catch-all reference to "any other matter constituting an avoidance or affirmative defense." Fed.R.Civ.P. 8(c); *see Ocean Atl. Dev. Corp. v. Willow Tree Farm, L.L.C.,* 2002 WL 485387, at * 2. It is therefore encouraged that pleaders allege affirmatively anything that could be considered an affirmative defense because of the possibility of waiver. *Ocean Atl. Dev. Corp. v. Willow Tree Farm,* 2002 WL 485387, at *2 (citing *Bobbitt,* 532 F.Supp. at 736). "[T]he basic concept of an affirmative defense is an *admission* of the facts alleged in the complaint, coupled with the assertion of some other reason defendant is not liable." *Instituto Nacional de Comercializacion Agri-*

*cola v. Cont'l Ill. Nat'l Bank & Trust Co.,* 576 F.Supp. 985, 989 (N.D.Ill.1983) (emphasis in original).

Second, affirmative defenses are subject to all the pleading requirements of the Federal Rules of Civil Procedure. FED. R. CIV. P. 8(c); *Renalds v. S.R.G. Rest. Group,* 119 F.Supp.2d 800, 802 (N.D.Ill.2000). However, even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, an allegation must include either direct or inferential allegations respecting all material elements of the claim asserted. *MAN Roland Inc. v. Quantum Color Corp.,* 57 F.Supp.2d 576, 578 (N.D.Ill.1999).

Last, under Rule 12(b)(6), the court must accept all factual allegations as true and draw all reasonable inferences in favor of the pleader. Fed. R. Civ. P. 12(b)(6); *Renalds,* 119 F.Supp.2d at 802 (citing *Gomez v. Ill. St. Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987)). As a general rule, a court will strike an affirmative defense only if it is insufficient on the face of the pleadings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir.1989).

A. Affirmative Defenses I, V, VII, IX, and X

Plaintiff has moved to strike Affirmative Defenses I (Adequate Remedy at Law), V (Failure to State a Claim), VII (Innocent Infringement), IX (Lack of Standing), and X (Failure to Satisfactorily Allege Causation). The Court grants the motion to strike these purported defenses.

First, with regard to Affirmative Defense I, defendants argue that plaintiff has an "adequate remedy at law" in response to Ocean Atlantic Woodland's claim for injunctive relief in its complaint. In considering a preliminary or temporary injunction, the burden of proof is normally on the moving party to prove they are entitled to injunctive relief as demonstrated by four factors: (1) likelihood of prevailing on the merits; (2) an inadequate remedy at law; (3) the irreparable harm the nonmovant will

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 4

suffer if preliminary relief is granted, balanced against the irreparable harm to the movant if relief is denied; and (4) the injunction is not inconsistent with the public interest. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994).

**\*4** The burden of proof is on plaintiff Ocean Atlantic Woodland to prove that no adequate remedy at law exists in seeking injunctive relief. Accordingly, the argument that Ocean Atlantic Woodland has an adequate remedy at law is merely a denial of one of the elements plaintiff is required to prove. *See, e.g., Household Fin. Servs., Inc. v. Northeastern Mortgage Inv. Co.,* No. 00 C 667, 2000 WL 816795, at \*1 (N.D. Ill. June 22, 2000) (stating adequate remedy of law is not an affirmative defense because it is an assertion that the party cannot establish a *prima facie* case, not a negation or avoidance of a cause of action.) The Court holds that the purported defense of "adequate remedy at law" is not an affirmative defense, and thus the Court strikes Affirmative Defense I with prejudice.

Second, with regard to Affirmative Defenses V (Failure to State a Claim Under the Illinois Consumer Fraud Act) and X (Failure to Satisfactorily Allege Causation), the Court holds that the allegations supporting these claims are merely bare bones legal conclusions, and they are therefore stricken with prejudice. If defendants truly want to challenge whether the complaint states a claim under the Illinois Consumer Fraud Act or whether the complaint sufficiently alleges causation, they may do so by filing a Rule 12(b)(6) motion.

Third, defendants raise as Affirmative Defense VII the theory that Ocean Atlantic Woodland's claims are defeated by way of innocent infringement under the Copyright Act. Defendants incorrectly state that innocent infringement is an affirmative defense under 17 U.S.C. § 504(c), a section that instead refers to innocent infringement as a mitigating factor with regard to damages for infringement. *See* 17 U.S.C. § 504(c). It is well-accepted law that innocent infringement is actionable and will not constitute a defense to a finding of liability, though it may bear

upon the remedies available against such a defendant. *See generally Columbia Pictures Indus., Inc. v. Zakarian,* No. 90 C 4057, 1991 WL 93889, at \*4 (N.D.Ill. May 28, 1991); *see also* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT (hereinafter "NIMMER ON COPYRIGHT") § 13.08 (1983 & Supp.2002). Therefore, the Court grants plaintiff's motion to strike Affirmative Defense VII and strikes it with prejudice. However, defendants may raise the issue of innocent infringement as it pertains to the limitation of damages either at the summary judgment stage or at trial.

Fourth, with regard to Affirmative Defense IX (Lack of Standing), defendants argue that Ocean Atlantic Woodland lacks standing to pursue the claims and damages alleged in the complaint. Plaintiff argues that lack of standing is not an affirmative defense, and the Court agrees. Defendants' contention that plaintiff lacks standing is merely a denial of plaintiff's jurisdictional allegation in paragraph 5 of the Verified Complaint. Each defendant in its answer denies the factual averments in paragraph 5, and that is sufficient to preserve the defense that Ocean Atlantic lacks standing. According to defendants this is because (1) Roake and Lannert, who eventually transferred its copyright interests in the plans to Ocean Atlantic, conducted itself in a manner such that neither Roake and Lannert nor Ocean Atlantic would have standing to sue defendants; and/or (2) somehow the contract to transfer the copyright interests was defective. Therefore, the Court strikes with prejudice Affirmative Defense IX.

**\*5** In sum, the Court grants plaintiff's motion to strike Affirmative Defenses I, V, VII, IX, and X. These affirmative defenses are stricken with prejudice.

B. Affirmative Defense II: Unclean Hands

Defendants claim as their second affirmative defense that Ocean Atlantic Woodland's claims are defeated by the doctrine of unclean hands. Ocean

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Atlantic Woodland moves to strike this defense for failure to meet the requirements of Rule 9(b).

The doctrine of unclean hands is a properly designated and frequently raised affirmative defense, though not enumerated in Rule 8(c). *See Long v. Kemper Life Ins. Co.,* 553 N.E.2d 439, 440-41 (Ill.App.Ct.1990); *see also Tome Engenharia E Transporrtes, Ltd. v. Malki,* No. 94 C 7427, 1996 WL 172286, at \*11 (N.D.Ill. Apr. 11, 1996). "Under Illinois law, misconduct on the part of a plaintiff which will defeat a recovery in a court of equity under the doctrine of 'unclean hands' must have been conduct in connection with the very transaction being considered or complained of, and must have been misconduct, fraud or bad faith toward the defendant making the contention." *Baal v. McDonald's Corp.,* 422 N.E.2d 1166, 1171 (Ill.App.Ct.1981); *see also Energetec Sys., Inc. v. Kayser,* No. 84 C 10611, 1986 WL 8058, at \*2 (N.D.Ill. July 17, 1986) ("The defense of unclean hands is shown by misconduct by the plaintiff involving the transaction complained of, which amounts to fraud, misconduct or bad faith toward the defendant making the contention.").

If fraud is alleged under the doctrine of unclean hands, Rule 9(b) requires that allegations of fraud include the particular circumstances involved, including the time, place, and specific contents of the alleged false representations or omissions. Fed. R. Civ. P. 9(b). In other words, the party claiming fraud must place the opposing party on notice of the "who, what, where and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life. Ins.,* 172 F.3d 467, 469 (7th Cir.1999).

Ocean Atlantic Woodland admits that defendants satisfy this standard of "who, what, where and when" but then contends that the alleged conduct fails to put plaintiff on specific notice of how it might be characterized as fraudulent in accordance with Fed.R.Civ.P. 9(b). (Ocean Atlantic Woodland's Reply Supp. Mot. Strike Affirmative Defenses, at 5.) In support of their claim of "unclean hands," defendants have alleged that: (1) Ocean At-

lantic Woodland's obtaining of the copyright of the plans in February 2002 was a late "hedge"--impliedly a preparation to get around--the District Court and Seventh Circuit's rulings in *Arnhold v. Ocean Atl. Woodland Corp.,* 132 F.Supp.2d 662 (N.D.Ill.2001), *aff'd,* 284 F.3d 693 (7th Cir.2002), which stated that Ocean Atlantic Woodland had forfeited all rights to the Byzantio/ Arnhold property; (2) Ocean Atlantic Woodland did not pay anything for the February 2002 assignment; and (3) the Protected Plans are not original, distinctive works but were derived from work done in 1994 and 1995 by Roake and Lannert for a third party so that late purchase of these plans in February 2002 was for the purpose of creating and filing this lawsuit as harassment after other previous failed litigation attempts. (Defs.' Joint Resp. Pl.'s Mot. Strike Affirmative Defenses, at 17-18 ("Defs.' Joint Resp."); *see also* Def. Cambridge's Affirm. Defs. ¶¶ 1-53.)

\*6 Defendants' factual allegations have sufficiently put plaintiff on notice of the affirmative defense of unclean hands and defendants have pleaded sufficient facts to satisfy the Rule 9(b) standard of pleading with particularity for the claim of fraud. Whether the facts alleged by defendants constitute fraudulent conduct remains to be seen, and it seems premature to strike this defense at this stage in the litigation. [FN3] *See, e.g., Wausau Ins. Co. v. Woods Equip. Co.,* No. 01 C 8009, 2002 WL 398542, at \*2 (N.D.Ill. Mar. 14, 2002). Rule 9(b) does not require that facts be pleaded which show the representation to be false but rather clearly the identity, time, place, content, and method of the misrepresentation. *Id.* at 792-93 (citations omitted).

> FN3. "Under Illinois law, the elements of common law fraud are: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Cumis Ins. Soc'y v. Peters,* 983 F.Supp. 787, 791-92 (N.D.Ill.1997).

Plaintiff already acknowledges that it is on notice of the "who, what, where, and when" of the alleged conduct, and this Court finds that plaintiff has been provided sufficient notice of how this conduct constitutes fraud such that the affirmative defense satisfies Rule 9(b). Further, the doctrine of unclean hands includes the standards of "misconduct" and "bad faith" as well as fraud, and defendants' factual allegations are clearly sufficient to state a claim of unclean hands under those theories as well. *See, e.g., Zic v. Italian Gov't Travel Office,* 130 F.Supp.2d 991, 999 n.8 (N.D.Ill.2001) (unclean hands is an equitable affirmative defense that need not be plead with particularity unless fraud is alleged invoking Rule 9(b)). It is clear from the allegations supporting defendants' affirmative defense that defendants rely on a copyright misuse defense, which is inextricably intertwined with their unclean hands defense. Therefore, the Court denies plaintiff's motion to strike Affirmative Defense II (Unclean Hands).

C. Affirmative Defense III: Divestive Publication

Defendants' third affirmative defense states that Ocean Atlantic Woodland's claims are defeated by the divestive publication of the plans which are the subject of this lawsuit. Plaintiff has responded that 1) divestive publication is no longer an affirmative defense to copyright infringement and 2) publication through placement in public files is not divestive publication.

The term "divestive publication" is primarily associated with works published prior to January 1, 1978--the date at which the common law copyright as to most works terminated due to federal preemption. 1 NIMMER ON COPYRIGHT §§ 4.01[A]-[B] (discussing the nature of publication prior and after

January 1, 1978); *see, e.g., Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1101 (2d Cir.1982). Prior to January 1, 1978, publishing without appropriate copyright notice could divest the copyright owner of his/her rights and thrust the work into the public domain. [FN4] *See* 2 NIMMER ON COPYRIGHT § 7.02; *see generally Roy Export Co.,* 672 F.2d at 1101-02. Under the current Copyright Act, however, copyright rights are no longer divested by publication and the notice requirement was made optional under the Berne Convention Implementation Act of 1988 (Pub.L. No. 100-568 (1988)) (stating lack of notice no longer consigns a work to the public domain). 1 NIMMER ON COPYRIGHT § 4.13[A]; 2 *id.* § 7.02[C][3].

> FN4. Discussing works created under the 1909 Copyright Act, the *Roy Export Co.* court stated: "Frequently, when courts speak of 'publication' they mean a distribution or other occurrence that has the consequence of leaving an author with no copyright protection: the publication divests him of his common-law copyright, and he secures no statutory protection because he has not affixed a statutory notice in his name.... When such a 'divestive' publication occurs, the author's work enters the public domain." *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,* 672 F.2d 1095, 1101 (2d Cir.1982); *see, e.g., Bell v. Combined Registry Co.,* 536 F.2d 164, 168 (7th Cir.1976); *Conner v. Mark I, Inc.,* 509 F.Supp. 1179, 1180-81 (N.D.Ill.1981).

*7 Because the plans at issue in this case were created in the late 1990s, publication without appropriate copyright notice may not divest the owner of the copyright of its rights in the plans. However, the issue remains whether the plans were part of the public domain, for example, because the plans were legislatively adopted. *See, e.g., Veeck v. S. Bldg.Code Cong. Int'l, Inc.,* 293 F.3d 791, 793 (5th Cir.2002)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

(en banc). *But see John G. Danielson, Inc. v. Winchester-Conant Props., Inc.,* 186 F.Supp.2d 1, 14-18 (D.Mass.2002) (stating submission of proposed site plans to town under particular facts before the court did not put them in public domain), *aff'd in part, vacated in part on other grounds,* Nos. 02-1452, 02-1533, 2003 WL 834565 (1st Cir. Mar. 6, 2003).

Taking all the allegations in defendants' affirmative defenses as true, as we must on a motion to strike, defendants allege that the Village of Plainfield adopted into law the Annexation Agreement and the proposed housing development plans on the Arnhold/Byzantio property and that the plans attached to the Annexation Agreement are, by law, required to be followed by the developer of the property. (Def. Cambridge's Affirmative Defenses ¶¶ 25-38.) These allegations are sufficient to state a defense that the plans at issue were in the public domain.

In sum, although the Court finds that Affirmative Defense III is mistitled, the defense that public domain documents cannot be copyrighted is an affirmative defense and that defendants' allegations properly state this defense. Accordingly, the Court denies plaintiff's motion to strike this defense.

D. Affirmative Defense IV: Laches, Estoppel, and Waiver

Defendants' claim as their fourth affirmative defense that Ocean Atlantic's claims are defeated under the doctrines of laches, estoppel, and waiver. Plaintiff argues that the defendant has simply listed these affirmative defenses without separately alleging their required elements.

1. Laches

Laches is an affirmative defense under Rule 8(c). Laches bars a party's rights when: (1) unreasonable delay by plaintiff in seeking redress for the alleged infringement, which (2) results in harm or prejudice to the defendant. *Ty, Inc. v. W. Highland Publ'g,*

*Inc.,* No. 98 C 4091, 1998 WL 698922, at *10 (N.D.Ill. Oct. 5, 1998). Traditionally, plaintiff bears the burden of explaining the delay in bringing suit and, if the explanation is not sufficient, the defendant must show prejudice in the delay. *Zelazny v. Lyng,* 853 F.2d 540, 541 (7th Cir.1988). This is generally considered a factual inquiry and discouraged from being decided on a motion to strike. *Warrior Ins. Group, Inc. v. Insureon.com, Inc.,* No. 00 C 3619, 2000 WL 1898867, at *1 (N.D.Ill.Dec. 29, 2000).

In *Fleet Business Credit Corp. v. National City Leasing Corp.,* 191 F.R.D. 568, 569-70 (N.D.Ill.1999), the court struck down the defense of laches as having been inadequately pleaded because nothing in the complaint or answer indicated that plaintiffs were dilatory in bringing the action. In contrast to *Fleet Business,* however, this Court finds that defendants clearly indicate what actions of plaintiff they consider dilatory. Defendants allege the late acquirement of the copyright of the Roake/Lannert Plans in February 2002, seven months after Cambridge closed on the Arnhold/ Byzantio property, and the filing of the suit in April 2002 as detrimental to Cambridge in the time line of its development project. (Def. Cambridge's Affirm. Defenses ¶¶ 17-19; Defs.' Joint Resp., at 23.) Thus, the motion to strike defendants' fourth affirmative defense of laches is denied.

2. Estoppel

*8 Estoppel is an affirmative defense under Rule 8(c). To plead estoppel, defendants must show "that the copyright owner was aware of the infringing conduct and yet acted in a way that induced the infringer to reasonably rely upon such action to his detriment." *Ty, Inc.,* 1998 WL 698922, at *32-33; *Codest Eng'g v. Hyatt Int'l Corp.,* 954 F.Supp. 1224, 1231 (N.D.Ill.1996). Estoppel does not have to be explicitly pleaded but may be reasonably inferred. *Codest Eng'g v. Hyatt Int'l Cap.,* 954 F.Supp. 1224, 1231 (N.D.Ill.1996).

This Court finds that sufficient facts have been

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
(Cite as: 2003 WL 1720073 (N.D.Ill.))

pleaded to give adequate notice to plaintiff as to this affirmative defense. A court will strike an affirmative defense as legally insufficient only if it is impossible for the defendant to prove a set of facts in support of the affirmative defense that would defeat the complaint. *Van Schouwen v. Connaught Corp.,* 782 F.Supp. 1240, 1245 (N.D.Ill.1991). Defendants have alleged that it relied on the placement of the Roake/Lannert plans in the Annexation Agreement, which was allegedly enacted into law and made part of the public domain, when it created its own Cowhey/Pugsley Plans. (Def. Cambridge's Affirm. Defenses ¶¶ 20-37.) This allegation is sufficient to give plaintiff notice of defendants' affirmative defense of estoppel. Accordingly, the motion to strike defendants' affirmative defense of estoppel is denied.

3. Waiver

Waiver is an affirmative defense under Rule 8(c). For waiver to be asserted, defendants must claim Ocean Atlantic Woodland made a "voluntary, intentional relinquishment of a known right." *Int'l Ins. Co. v. Peabody Int'l Corp.,* No. 87 C 464, 1991 WL 23630, at *3 (N.D.Ill. Jan. 23, 1991). Cambridge has alleged that Ocean Atlantic Woodland was aware that the plans it submitted to the Village of Plainfield were incorporated into the Annexation Agreement and enacted into law. (Def. Cambridge's Affirm. Defenses ¶¶ 22-35.) While plaintiff may dispute this, it is possible to infer that there a voluntary or intentional relinquishment, if the facts are properly looked at in favor of the pleader. *See generally Household Fin. Servs., Inc. v. Northeastern Mortgage Inv. Co.,* No. 00 C 667, 2000 WL 816795 (N.D. Ill. June 22, 2000); *Fleet Business Credit Corp.,* 191 F.R.D. at 570; *Renalds v. S.R .G. Rest. Group,* 119 F.Supp.2d 800, 802 (N.D.Ill.2000). Plaintiff has therefore been provided sufficient notice as to this affirmative defense. The motion to strike the affirmative defense of waiver is denied.

E. Affirmative Defense VI: Merger

As a sixth affirmative defense, defendants allege

that Ocean Atlantic Woodland's claims are defeated under the doctrine of merger under the copyright law. Plaintiff argues that this fails to meet the pleading requirements of Rule 8.

"Copyright law only protects expressions, not ideas." *Tensor Group, Inc. v. Global Web Sys., Inc.,* No. 96 C 4606, 1998 WL 887081, at *3 (N.D.Ill.Dec. 11, 1998). However, there are situations in which a "given idea is inseparably tied to a particular expression." *Id.* at *2. If an idea is susceptible to only one form of expression, the merger doctrine applies and 17 U.S.C. § 102(b) would exclude the expression from the Copyright Act. *See, e.g., Veeck v. S. Bldg.Code Cong. Int'l,* 293 F.3d 791, 800-01 (5th Cir.2002). Giving copyright protection to the expression in those situations "would confer a monopoly over the idea itself, in contravention of the statutory command." *Tensor Group,* 1998 WL 887081, at *3 (quoting Nimmer, *Nimmer on Copyright* § 13.03[B][3] ). The allegedly infringing party bears the burden of proof on issues relating to merger, as the merger doctrine is an affirmative defense to infringement. *Id.*

*9 Defendants have pleaded that the alleged similarities between plaintiff and defendants' plans are the result of the Annexation Agreement and/or characteristics of the land that dictate engineering. (Defs.' Joint Resp., at 30.) Questions whether the engineering plans were strictly dictated by characteristics of the land and/or by law may only be answered by further factual inquiry. Accordingly, it would be premature to strike Affirmative Defense VI at this time.

F. Affirmative Defense VIII: Fair Use

Defendants claim as their eighth affirmative defense that their alleged use of the works in the complaint constituted fair use, particularly in that such use was mandated by law and contract, *i.e.,* the Annexation Agreement. Plaintiff responds that defendants cannot plead any facts that will support this defense.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 9

Fair use is a well-established affirmative defense of copyright law. 17 U.S.C. § 107. *See Midway Mfg. Co. v. Pub'ns Int'l, Ltd.,* No. 94 C 1005, 1994 WL 188531, at \*2 (N.D.Ill. May 12, 1998). 17 U.S.C. § 107 provides a four factor test for fair use: "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. "[A]lthough affirmative defenses may be raised in a motion to dismiss, defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment motions or adjudication at trial." *Chicago Sch. Reform Bd. of Trs. v. Substance, Inc.,* 79 F.Supp.2d 919, 930-32 (N.D.Ill.2000) (internal quotation omitted).

This Court finds that it is not impossible for defendants to prove a set of facts in support of the affirmative defense of fair use that would defeat the complaint. As discussed above, certain issues remain as to the nature of the copyrighted work that require factual inquiry and discovery, *e.g.,* whether the Roake/Lannert plans were in the public domain and to what extent the plans were dictated by the characteristics of the land and the Annexation Agreement.

Defendants have provided sufficient facts to provide plaintiff notice of this affirmative defense, and it would be premature to strike this defense at this stage of the litigation. Therefore, plaintiff's motion to strike Affirmative Defense VIII is denied.

G. Affirmative Defense XI: No Expectation of Further Payment

Defendants allege in Affirmative Defense XI that, under copyright law, the authors of the works in the complaint had been paid in full for the creation of the works which were submitted to the Village of Plainfield and/or are attached to and part of the Annexation Agreement with the Village of Plainfield and said authors had and have no expectation of further payment. Plaintiff argues that this is not an affirmative defense, but the Court disagrees.

\*10 The Court finds that defendants' affirmative defense XI is sufficient to put plaintiff on notice of defendants' theory that the authors of the plan, Roake and Lannert, conducted themselves in such a way as to consent to the use of the plans without expectation of further payment. In response to this affirmative defense, plaintiff argues that there can be no transfer of rights in the plans unless there is an express, written transfer of said rights. However, plaintiff ignores that an exclusive or nonexclusive license is an affirmative defense to a claim of copyright infringement, which is the theory upon which Affirmative Defense XI is based. Accordingly, the Court denies plaintiff's motion to strike Affirmative Defense XI.

H. Cambridge & Pugsley's Affirmative Defense XII: Precluded by Prior Decision

Defendants Cambridge and Pugsley (but not Cowhey) claim "Precluded by Prior Decision" as their twelfth affirmative defense--mistakenly referred to as Affirmative Defense XIII in the response to the motion to strike. (*Compare* Def. Cambridge's Affirm. Defenses ¶¶ 76-77; Def. Pugsley's Affirm. Defenses ¶¶ 60- 61, *with* Defs.' Joint Resp., at 36.) Affirmative Defense XII states that the claims of Ocean Atlantic Woodland are precluded by *Arnhold v. Ocean Atlantic Woodland Corp.,* 284 F.3d 693 (7th Cir.2002), *aff'g,* 132 F.Supp.2d 662 (N.D.Ill.2001). (Defs.' Joint Resp., at 36.) However, in their response to plaintiff's Motion to Strike, defendants seem to indicate that they are relying on issue preclusion as an Affirmative Defense, rather than claim preclusion. (Defs.' Joint Resp., at 36.) Plaintiff moves to strike this affirmative defense as immaterial.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)
**(Cite as: 2003 WL 1720073 (N.D.Ill.))**

Page 10

Issue preclusion is considered an affirmative defense. *Adair v. Sherman,* 230 F.3d 890, 894 (7th Cir.2000). "Issue preclusion bars from relitigating issues of fact or law previously determined by a valid final judgment in an action between the same parties." *Wsol v. Carr,* No. 99 C 6834, 2001 WL 1104641, at *6 (N.D.Ill. Sep. 18, 2001). An issue may not be litigated if the following conditions are met: (1) plaintiff in this action was a party to the prior actions; (2) the issue sought to be precluded is the same as that involved in the prior action; (3) the issue was actually litigated; (4) the determination of the issue was essential to the final judgment. *Id.*

The Court finds that this affirmative defense has been inadequately pleaded under the requirements of Rule 8. It is unclear which issues defendants seeks to preclude. This makes it impossible to determine whether the issues sought to be precluded in the instant action are the same as those in the prior action and whether the determination of those issues was essential to the final judgment. Accordingly, the Court grants plaintiff's motion to strike this defense and Affirmative Defense XII is stricken without prejudice to enable defendants to correct this technical deficiency.

I. Cambridge & Pugsley's Affirmative Defense XIII & Cowhey's Affirmative Defense XII: Independent Creation

*11 Defendants allege as an affirmative defense that the works said to infringe on Ocean Atlantic Woodland's copyrighted works were independently created. (Def. Cambridge's Affirm. Defenses ¶¶ 78-79; Def. Pugsley's Affirm. Defenses ¶¶ 62-63; Def. Cowhey's Affirm Defenses ¶¶ 50-51. *But see* Defs.' Joint Resp., at 35 (addressing defense jointly as Affirmative Defense XII).) Plaintiff argues that this affirmative defense lacks merit and credibility.

The manufacture, distribution and/or sale of an unauthorized copy which is substantially similar to a protected work infringes on the copyright in the work. *Ty, Inc. v. GMA Accessories, Inc.,* 959 F.Supp. 936, 939 (N.D.Ill.1997), *aff'd,* 132 F.3d 1167 (7th Cir.1997). In order to establish copyright infringement, a plaintiff must demonstrate that it owns a valid copyright, and that the defendant copied the protected work. *Id.* The copying inquiry entails questions of access, substantial similarity, and independent creation. *Ty, Inc. v . W . Highland Publ'g, Inc.,* No. 98 C 4091, 1998 WL 698922, at *7 (N.D.Ill. Oct. 5, 1998). When the plaintiff makes a showing of access and substantial similarity, a presumption of copying is raised. *LZT/Filliung P'shp, LLP v. Cody/Braun & Assocs., Inc.,* 117 F.Supp.2d 745, 753 (N.D.Ill.2000). However, while copying is forbidden, an independent creation resulting in an identical work, is permissible. *Ty, Inc.,* 132 F.3d at 1169. An inference of copying may be rebutted by evidence of independent creation. *Ellis v. Diffie,* 177 F.3d 503, 507 (6th Cir.1999).

Therefore, plaintiff's argues that the affirmative defense of independent creation should be stricken because: (1) there is an admission by defendants that they looked at the Roake/Lannert plans and (2) the Pugsley/Cowhey plans closely resemble the Roake/ Lannert plans. Defendants do not deny having access to the Lannert/Roake plans or that substantial similarity exists between the Pugsley/Cowhey plans to the Lannert/Roake plans. (Def. Cambridge's Answer ¶ 26A; Def. Cambridge's Affirm. Defenses ¶¶ 22-35; Defs .' Joint Resp., at 35.) Instead, defendants argue that they did their own work and created their own plans based on the characteristics of the land and the requirements as set by law in the Annexation Agreement.

The Northern District of Illinois and the Court of Appeals for the Seventh Circuit have held that if an alleged infringer creates the accused work independently or both works were copied from a common source in the public domain, then there is no infringement. *LZT/Filliung P'shp,* 117 F.Supp.2d at 752-53; *Selle v. Gibb,* 741 F.2d 896, 901 (7th Cir.1984). In *Ty, Inc. v. GMA Access., Inc. II,* the Seventh Circuit reasoned that two items could be strikingly similar, even identical, not because one is copied from another but because both are copies of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the same thing in the public domain. 132 F.3d at 1170. Defendants have alleged that Cowhey, and Pugsley based their plans on inherent characteristics of the land and that the land was subject to the Annexation Agreement which they allege was publicly available. Thus, both the land and the Annexation Agreement are claimed to be in the public domain. Therefore, the motion to strike Affirmative Defense XII is denied.

J. Plaintiff's Motion to Strike Sections of Cambridge's Pleadings

**\*12** Lastly, Ocean Atlantic Woodland asks the Court to strike the factual allegations in the paragraphs preceding defendants' affirmative defenses because the statements contain misleading and improper accusations and legal conclusions relating to matters irrelevant to the plans at issue in this case. (Pl.'s Mem. Supp. Mot. Strike, at 35-36; *see, e.g.,* Def. Cambridge's Affirm. Defenses ¶¶ 1-16.) Ocean Atlantic Woodland claims that these allegations are immaterial, impertinent, and/or scandalous. (Pl.'s Mem. Supp. Mot. Strike, at 35.) Plaintiff also argues that they are an attempt to mislead the Court from the weakness of the defense and that these allegations improperly refer to prior and completely different litigation. *Id.*

Contrary to plaintiff's belief otherwise, the Court is not so easily mislead and is capable of separating the wheat from the chaff. None of the allegations in paragraphs 1-16 meet the standards provided under Rule 12(f), and thus, the motion to strike these paragraphs is denied with prejudice.

### CONCLUSION
For the foregoing reasons, this Court grants in part and denies in part Plaintiff's Motion to Strike Defendants' Affirmative Defenses [doc. no. 26-1]. The Court grants the motion as to Affirm. Defenses I, V, VII, IX, and X and strikes them with prejudice and grants the motion as to Cambridge and Pugsley's Affirm. Defense XII and strikes it without prejudice. The Court denies the motion as to Affirm. Defenses II, III, IV, VI, VIII, XI, Cambridge and

Pugsley's Affirm. Defense XIII (*i.e.,* Cowhey's Affirm. Defense XII), and paragraphs 1-16 of defendants' affirmative defense pleadings.

SO ORDERED

Not Reported in F.Supp.2d, 2003 WL 1720073 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of July, 2008, a copy of the **Plaintiff's Reply Brief In Support Of Plaintiff's Motion To Strike Affirmative Defenses Asserted In Defendant's Answer** was served, by electronic filing, upon:

Richard D. Kirk, Esquire
Stephen P. Brauerman, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130

Norman M. Monhait (#1040)