## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GREG O'GARA, On Behalf Of The ESTATE OF    :
TAMARA PORTNICK, Individually and On       :
Behalf of All Others Similarly Situated,         :
                                              :
         Plaintiff,                 :
                                              :
         v.                        :      C.A. No. 08-113-LPS
                                              :
COUNTRYWIDE HOME LOANS, INC.,        :
                                              :
         Defendant.               :
                                              :

---

Carmella P. Keener, Esq., ROSENTHAL MONHAIT & GODDESS, P.A., Wilmington, DE.
Robert I. Harwood, Esq. and Roy Shimon, Esq., HARWOOD FEFFER LLP, New York, NY.
Jeffrey M. Norton, Esq., NEWMAN FERRARA LLP, New York, NY.

      Attorneys for Plaintiff.

Richard D. Kirk, Esq. and Stephen B. Brauerman, Esq., BAYARD, P.A., Wilmington, DE.
Thomas M. Hefferon, Esq. and Sabrina M. Rose-Smith, Esq., GOODWIN PROCTER LLP,
Washington, DC.

      Attorneys for Defendant.

---

## **MEMORANDUM OPINION**

Date: July 12, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is a Motion to Certify Class filed by plaintiff Greg O'Gara, on behalf of the Estate of Tamara Portnick ("Plaintiff"). (D.I. 76) For the reasons discussed below, the Court will deny Plaintiff's Motion to Certify Class.

## I. BACKGROUND

### A. Factual Background

Countrywide Home Loans, Inc. ("Defendant" or "Countrywide"[1]) is a nationwide mortgage lender. (D.I. 80, Ex. 1 ¶ 2) At loan closings, borrowers who obtain loans from Countrywide execute Notes and Mortgage Deeds of Trust ("Mortgage Agreements") governing the terms of their loans. (*Id.*) The Mortgage Agreements contain provisions permitting Countrywide to recover costs, fees, and expenses in the event that borrowers default upon their obligations (the "Fee Provisions").[2] Once a borrower defaults, Countrywide can initiate foreclosure proceedings. (D.I. 80, Ex. 1 ¶ 4)

During the Class Period,[3] approximately 150 different law firms worked on foreclosure proceedings for Countrywide, and each firm provided services pursuant to a standardized

---

[1]"Countrywide" will also be used interchangeably to refer to Countrywide Home Loan Servicing, L.P., a servicing subsidiary of Countrywide Home Loans, Inc. (*See* D.I. 80 at 4 n.1)

[2]Tamara Portnick's Mortgage Agreement contained a provision that stated: "the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." (D.I. 76, Ex. C § 6(E)) Countrywide's uniform mortgage agreement contains similar language: "Lender may charge Borrower fees for services performed in connection with Borrower's default . . . including, but not limited to, attorneys' fees, property inspection and valuation fees." (*Id.*, Ex. D § 14)

[3]The "Class Period" is defined as February 15, 2002 through present. (D.I. 77 at 1)

1

agreement with Countrywide. (*See* D.I. 76, Ex. A at 21:19-25; *id.*, Ex. A at 73:10-21)[4] Pursuant

to the standardized agreement, Countrywide's outside counsel submitted their invoices for

attorneys' fees and costs to Countrywide's Foreclosure and Bankruptcy Finance Department.

(*See id.*, Ex. B. at 40:6-7; 40:16-41:5) Countrywide reviewed foreclosure counsel's invoices to

determine if the total time billed was within the "investor insurer allowable amount"[5] applicable

to the loan at issue. (*See id.*, Ex. B at 19:5-22) If foreclosure counsel's invoices exceeded the

investor insurer allowable amount without prior approval, then Countrywide reviewed the bills

submitted for accuracy. (*See id.*, Ex. B at 23:9-11, 23:17-24:6, 24:10-21) If counsel's invoices

did not exceed the investor insured allowable amount, then the charges were not reviewed unless

a billing accuracy audit was conducted.[6] (*See id.*, Ex. A at 56:8-10, 71:9-11, 75:12-18; *id.*, Ex. G

¶ 5)

      If a borrower voluntarily paid to bring a loan out of default, ending foreclosure, then the

loan became known as a "reinstated loan" and was subject to a reconciliation review by

Countrywide. (D.I. 80 at 6) When a borrower notified Countrywide that he or she wanted to

reinstate the loan, Countrywide would calculate the amount necessary to reinstate.[7] (*Id.*) After

---

[4] All citations to depositions are in the format of page#:line#.

[5] The "investor insurer allowable amount" was the maximum allowable attorneys' fees that the loan's investor or insurer was willing to pay for a foreclosure action.

[6] Not all loans were subject to the billing accuracy audit. Rather, Countrywide determined the number of loans to audit for billing accuracy by using a formula that randomly generated a percentage of loans Countrywide should audit. Based on the number of loans that the formula generated as requiring audit, Countrywide randomly selected loans to review for billing accuracy to fulfill that number. (*See* D.I. 76, Ex. A at 60:3-7, 60:19-63:22)

[7] The reinstatement amount was comprised of (1) the fees and costs foreclosure counsel had already billed to date and (2) the fees and costs foreclosure counsel informed Countrywide it

2

the loan was reinstated, Countrywide conducted a loan reconciliation review to compare the

estimated fees and costs listed on the reinstatement quote with those actually incurred by

foreclosure counsel. (*See* D.I. 76, Ex. B at 46:15-47:8) In the event that the borrower was

overcharged, Countrywide refunded the amount of overcharge to the borrower. (*See id.* at 46:14-

47:8) Tamara Portnick's loan was subject to the reinstatement process. (D.I. 80 at 6)

### B.  **Procedural History**

On February 25, 2008, Plaintiff filed a putative class action complaint alleging,

individually and on behalf of all others similarly situated, that Defendant charged "inflated,

unverifiable or false costs, fees and expenses associated with enforcement proceedings." (D.I. 1

¶ 17) Plaintiff asserts three causes of action: breach of contract, unjust enrichment, and breach of

duty of good faith and fair dealing. (*Id.* ¶¶ 68-80) On November 14, 2011, after completing

discovery related to class certification, Plaintiff filed the pending Motion to Certify Class. (D.I.

76)

Plaintiff seeks to certify a class (the "Proposed Class") consisting of:

> All individuals who (i) executed a Mortgage Note providing the
> note holder is entitled to be "paid back . . . for all its costs and
> expenses in enforcing the note . . . includ[ing] . . . reasonable
> attorneys' fees;" and (ii) have been subject to an enforcement
> action concerning the Mortgage Note by Countrywide; (iii)
> received a demand from Countrywide to pay costs, fees and
> expenses in excess of those Countrywide and/or its agents actually
> incurred or were obligated to pay; and (iv) suffered damages as a
> result [during the Class Period].

(*Id.* at 1-2; *see* D.I. 77 at 1) Plaintiff seeks class certification pursuant to Rules 23(a), 23(b)(2),

---

expected to bill between the date the quote was requested and the date reinstatement was likely to
occur. (*See* D.I. 76, Ex. B at 46:4-13, 49:17-50:15, 53:4-7; *see also* D.I. 80, Ex. 4)

and 23(b)(3) of the Federal Rules of Civil Procedure. (D.I. 76 at 1) Additionally, pursuant to

Federal Rule of Civil Procedure 23(g), Plaintiff seeks appointment of the law firm of Harwood

Feffer LLP ("Harwood Feffer") as class counsel. (D.I. 77 at 19)

The parties completed briefing on the Motion to Certify Class on March 23, 2012. (D.I.

88) The Court held oral argument on May 15, 2012. *See* Mot. Hr'g Tr., May 15, 2012 (D.I. 89

and, hereinafter, "Tr.").

## II.   **LEGAL STANDARDS**

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis,

that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d

305, 309 (3d Cir. 2008) (internal quotation marks omitted). In reviewing a motion for class

certification, such "rigorous analysis may include performing a preliminary inquiry into the

merits." *Id.* at 317 (internal quotation marks omitted). "Although the district court's findings for

the purpose of class certification are conclusive on that topic, they do not bind the fact-finder on

the merits." *Id.* at 318.

Class certification under Rule 23 has two principal components. First, the party seeking

certification must establish the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is
> impracticable [numerosity]; (2) there are questions of law or fact
> common to the class [commonality]; (3) the claims or defenses of
> the representative parties are typical of the claims or defenses of
> the class [typicality]; and (4) the representative parties will fairly
> and adequately protect the interests of the class [adequacy].

*Id.* at 309 n.6 (internal quotation marks omitted). "Second, the proposed class must satisfy at

least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, --- U.S.

4

----, 131 S. Ct. 2541, 2548 (2011).

Here, Plaintiff relies on Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* at 2548-49. Class certification under Rule 23(b)(3) "is permissible when the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Hydrogen Peroxide*, 552 F.3d at 310 (internal quotation marks omitted).

Importantly, "a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Id.* at 320.

## III.   DISCUSSION

In order to determine if Plaintiff has proven by a preponderance of the evidence that the Proposed Class satisfies all Rule 23 requirements, the Court will address each requirement in turn.

### A.   Rule 23(a) Requirements

#### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "No minimum number of plaintiffs is required to maintain a suit as a class

action," but the Third Circuit has generally found that classes with over forty members satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Plaintiff asserts that numerosity is easily satisfied because, during the Class Period, hundreds of thousands of Countrywide mortgage loans fell into foreclosure and were subject to Countrywide's imposition and collection of costs, fees, and expenses. (D.I. 77 at 8-9) Defendant contends that Plaintiff has failed to show numerosity because there is no evidence in the record regarding the actual number of Countrywide mortgages that fell into foreclosure during the Class Period. (D.I. 80 at 29)

At this stage of the litigation, "it is not necessary [for Plaintiff] to demonstrate the precise number of class members when a reasonable estimate can be inferred from facts in the record." *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003); *see also Lloyd v. City of Phila.*, 121 F.R.D. 246, 249 (E.D. Pa. 1988) ("A court may even certify a class whose size is unknown, if common sense or common knowledge indicates that it will be large.").[8] Despite the lack of record evidence regarding the exact number of Countrywide mortgages that fell into foreclosure during the Class Period, the Court concludes that there were at least hundreds of these mortgages, and, thus, numerosity is satisfied.[9]

## 2. **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "A

---

[8]Countrywide's counsel concedes that the Court has discretion to apply its common sense in making a determination on numerosity. (*See* Tr. at 50)

[9]The Court bases its conclusion on the number of mortgage foreclosures handled by the law firms that Countrywide used as its outside counsel coupled with the voluminous number of mortgages that Countrywide services. (*See* D.I. 1 at ¶¶ 10, 14; Tr. at 20-21)

6

finding of commonality does not require that all class members share identical claims." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). Rather, commonality requires "the plaintiff to demonstrate that the class members have suffered the same injury," which means more than "that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks omitted). Plaintiff must demonstrate that its claim depends on "a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, the claims of both Plaintiff and the Proposed Class depend on the contention that Countrywide breached a common provision of their Mortgage Agreements.[10] Proof that Countrywide had a standard policy not to investigate the accuracy of bills submitted by its outside counsel would help resolve the claims of all class members because it would demonstrate that Countrywide's standard policy was not to comply with the Fee Provisions of its Mortgage Agreements.[11] Thus, the Proposed Class satisfies the commonality requirement.

### 3. **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

---

[10]Defendant's contention that Plaintiff has failed to demonstrate that Countrywide used a standard form contract for borrowers is unpersuasive. (*See* D.I. 80 at 12) Indeed, in its briefing, Countrywide admitted that "the Mortgage Agreements typically contained provisions permitting Countrywide to recover amounts incurred in enforcing a Note." (*Id.* at 3) The record evidence also supports Plaintiff's claim that Countrywide used a standard form contract for most Mortgage Agreements. (*See* D.I. 76, Ex. B at 65:21-66:1; Tr. at 6) Additionally, the Proposed Class is limited to those borrowers who had Mortgage Agreements containing specific uniform language.

[11]Indeed, Plaintiff has produced evidence to support its contention that Countrywide had a standard policy of collecting costs, fees, and expenses from borrowers without verifying the accuracy and reasonableness. (*See* D.I. 83 at 4 n.1 (collecting evidence))

7

of the claims or defenses of the class." The Third Circuit has identified three interrelated

considerations that play a part in assessing whether typicality is satisfied:

> (1) the claims of the class representative must be generally the
> same as those of the class in terms of both (a) the legal theory
> advanced and (b) the factual circumstances underlying the theory;
> (2) the class representative must not be subject to a defense that is
> both inapplicable to many members of the class and likely to
> become a major focus of the litigation; and (3) the interests and
> incentives of the representative must be sufficiently aligned with
> those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Here, all three considerations weigh in favor of finding typicality. First, Plaintiff's legal

claims – breach of contract, unjust enrichment, and breach of the duty of good faith and fair

dealing – are identical to those of the Proposed Class. The basic factual circumstances

supporting Plaintiff's claims – namely, Defendant's failure to verify the accuracy of foreclosure

counsel's bills and the contractual provision contained in the Mortgage Agreement which

required Plaintiff to pay back all fees and costs incurred by Countrywide in the foreclosure action

– are shared by the rest of the Proposed Class. Indeed, Plaintiff has defined the Proposed Class

in such a way so as to ensure typicality among the class members with respect to the language

contained in their Mortgage Agreements. The fact that individual class members underwent

different types of foreclosure proceedings does not defeat typicality, as all claims are based on a

breach of contract theory involving Countrywide's systematic practice of not verifying the

accuracy of outside counsel's bills. *See generally Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d

Cir. 2006) ("[F]actual differences will not render a claim atypical if the claim arises from the

same event or practice or course of conduct that gives rise to the claims of the class members,

8

and if it is based on the same legal theory.") (internal quotation marks omitted); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002) ("[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members.").

Second, Plaintiff is not subject to a unique defense that is inapplicable to many members of the class and likely to become a major focus of the litigation. Although Countrywide contends that it will assert various defenses that are only applicable to individual class members (*see* D.I. 80 at 24-27), there is no evidence that any of these defenses are unique to Plaintiff. Rather, it appears that these defenses apply to the claims of numerous class members.[12]

Finally, there is no evidence that the Plaintiff's interests are not aligned with those of the Proposed Class. Plaintiff and all members of the Proposed Class have a common interest in obtaining recovery from Countrywide.

Accordingly, the Proposed Class satisfies the typicality requirement.

### 4.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class." "First, the adequacy inquiry tests the qualifications of the counsel to represent the class. Second, it seeks to uncover conflicts of interests between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) (internal citations and quotation marks omitted).

---

[12]For instance, Defendant contends it will assert a voluntary repayment defense against those class members who had their loans reinstated. (D.I. 80 at 25) This defense will apply not only to Plaintiff, but also to all other class members who had their loans reinstated.

9

Defendant does not object to the adequacy of Harwood Feffer to serve as class counsel.
(Tr. at 50) The attorneys of Harwood Feffer are experienced class action attorneys who have
been successful in prosecuting class actions and complex civil litigation in courts throughout the
country. (*See* D.I. 76, Ex. H) Thus, the Court concludes that Harwood Feffer will adequately
represent the interests of the Proposed Class.

Additionally, the Court concludes that Plaintiff will fairly and adequately protect the
interests of the Proposed Class. There is nothing in the record to support the conclusion that a
conflict exists between Plaintiff and the Proposed Class, and Defendant does not challenge the
adequacy of Plaintiff to serve as class representative. (Tr. at 50) Both Plaintiff and the Proposed
Class have a strong interest in establishing Countrywide's liability and recovering damages.

Therefore, the Proposed Class satisfies the adequacy of representation requirement.

## B.    Rule 23(b) Requirements

Having determined that the Proposed Class meets the prerequisites of Rule 23(a), the
Court will next address whether the Proposed Class meets the additional requirements of Rule
23(b). For the reasons set forth below, the Court concludes that the Proposed Class cannot be
certified under either Rule 23(b)(2) or (b)(3).

### 1.    Rule 23(b)(2)

First, Plaintiff seeks class certification pursuant to Rule 23(b)(2), under which class
certification is appropriate if "the party opposing the class had acted or refused to act on grounds
generally applicable to the class." Plaintiff contends that the Proposed Class can be certified
pursuant to Rule 23(b)(2) because "the focus of this action is to obtain class-oriented declaratory
and injunctive relief: namely, to enjoin the illegal billing practices and procedures by

10

Countrywide and to order revision of the language of the Mortgage Note to make its terms clear to unwitting borrowers." (D.I. 77 at 14) Although one goal of this action is to obtain injunctive relief for the Proposed Class, this alone is not sufficient to certify a class under Rule 23(b)(2) where the class also seeks monetary damages. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court stated that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 131 S. Ct. at 2557. If they were to prevail, the members of the Proposed Class would be entitled to different amounts of monetary damages based on the specific amount that they were overcharged for attorneys' fees and costs.

The Supreme Court left open the possibility that monetary awards incidental to injunctive relief may be permissible under Rule 23(b)(2). *See id.* at 2561; *see also Gates v. Rhom & Haas Co.*, 655 F.3d 255, 264 n.13 (3d Cir. 2011). However, the Court concludes that the Proposed Class's claims for monetary damages are not incidental to injunctive relief. Here, damages cannot be determined by a formula on a class-wide basis; instead, determining damages will involve individualized assessments of class members' claims and may require the Court to examine statutory defenses which hinge on the conduct of individual class members. *See Wal-Mart*, 131 S. Ct. at 2561 (noting that if individual litigation is required to determine damages and assess statutory defenses then this prevents monetary relief from being "'incidental' to the class wide injunction").

Accordingly, the Proposed Class cannot be certified pursuant to Rule 23(b)(2).

### 2. Rule 23(b)(3)

Alternatively, Plaintiff seeks class certification pursuant to Rule 23(b)(3), which requires

11

that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiff has failed to demonstrate that the Proposed Class meets the predominance and superiority requirements of Rule 23(b)(3).

### a.    **Predominance**

The predominance requirement of Rule 23(b)(3) "tests whether proposed class[ ] [is] sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide*, 552 F.3d at 310-11. To establish predominance, issues common to class members must predominate over individual issues. *See In re Prudential*, 148 F.3d at 314-15. Common issues do not predominate if "proof of the essential elements of the cause of action requires individual treatment." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001). Whether an element requires individual or common treatment depends on the nature of the evidence that will suffice to resolve it. *See In re Hydrogen Peroxide*, 552 F.3d at 311. When an issue requires both individual and common proof, the Court must determine which proof is key to its outcome. *See In re Linderboard Antitrust Litig.*, 305 F.3d 145, 162-63 (3d Cir. 2002).

Plaintiff contends that "[p]redominance is readily met in cases, such as this, alleging a common course of conduct by defendant." (D.I. 77 at 15) In response, Defendant argues that many individualized questions predominate: questions regarding breach – including services preformed, fees charged, and foreclosure practices; questions regarding the calculation of damages (including whether specific class members even suffered damages at all); and questions relating to class-member-specific defenses – including mitigation of damages, whether there is a voluntary payment defense available, and whether res judicata is applicable to individual class

12

members' claims. (*See* D.I. 80 at 16-27)

The Court concludes that individualized questions predominate over questions common to the Proposed Class. Here, Plaintiff alleges that class members entered into standard form Mortgage Agreements with Countrywide and that Countrywide breached the Fee Provisions contained in the Mortgage Agreements by "impos[ing] on Class members inflated, unverifiable or false costs, fees and expenses associated with enforcement proceedings." (D.I. 1 at ¶ 17(a); *see id.* at ¶¶ 20-21) Plaintiff correctly points out that claims arising from standard form contracts are generally viewed as being "particularly appropriate" for class treatment where they are subject to generalized proof. (*See* D.I. 77 at 9-10 (collecting cases)) However, where, as here, numerous individualized inquiries are required to determine breach and damages, class certification is not appropriate. *See Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, 2011 WL 815209, at *6 (W.D.N.Y. Mar. 2, 2011) ("[C]ourts have denied certification even in cases that involved form contracts where numerous individual inquiries were required to determine whether a breach of the contract could be found."); *see also Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010); *Sparano v. Southland Corp.*, 1996 WL 681273, at *1-2 (N.D. Ill. Nov. 21, 1996).

Proving breach of contract will require individualized proof raising many individualized issues.[13] A breach of contract claim has three basic elements: (1) a valid contract, (2) breach of

---

[13]Both parties have briefed the applicability of Rule 23(b)(3) to Plaintiff's breach of contract claim only, acknowledging that the unjust enrichment and breach of good faith and fair dealing claims are dependent claims. (*See* D.I. 80 at 12 n.13) Accordingly, in determining whether Plaintiff can prove its case with evidence common to the Proposed Class, the Court analyzes only the breach of contract claim.

13

that contract, and (3) damages resulting from the breach.[14] Although existence of a standard contract is common to all class members and can be demonstrated on a class-wide basis, breach and damages cannot. For instance, in order to determine whether there was a breach, it will be necessary to analyze what each class member paid and what services outside foreclosure counsel performed related to that class member's case. In order to assess whether outside counsel's fees and costs were reasonable, it will be necessary to examine the specific services that outside counsel performed in connection with each foreclosure proceeding, which will vary from class member to class member.[15] Moreover, it will be necessary to assess whether each individual attorneys' billing rate and hours expended were reasonable, an inquiry involving individual factual questions which must be answered with individualized proof.[16] Numerous courts have recognized that predominance cannot be satisfied where a court must make a reasonableness determination of individual charges. *See, e.g.*, *St. Louis Park Chiropractic, P.A. v. Fed. Ins.*,

---

[14]These three elements are required in every state to prove breach of contract. (*See* D.I. 83, Ex. A (listing elements required to prove breach of contract claim in fifty states and District of Columbia)) A number of states impose an additional requirement – namely, that a plaintiff demonstrate its own performance of the contract. However, the performance of Plaintiff or members of the Proposed Class is not in dispute in this case and, therefore, does not impact the Court's analysis.

[15]The services involved in a foreclosure proceeding vary from client to client due to state law variations and individual actions of the borrower and third parties. (*See* Tr. at 31-32; D.I. 80 at 18-22 (discussing some individualized issues that occur even with routine foreclosure proceedings))

[16]Although Plaintiff contends that Countrywide had flat fee arrangements with certain law firms (Tr. at 17), this does not end the reasonableness inquiry. In order to assess whether the flat fee was reasonable, it would be necessary to examine what attorneys in a given locality typically charge for foreclosure proceedings, which will vary by location. (*See* Tr. at 49) Additionally, it would be necessary to examine what services foreclosure counsel actually performed in order to assess whether the flat fee charged was reasonable – and, as discussed above, this involves individualized factual questions that cannot be answered through class-wide proof.

14

*Co.*, 342 Fed. Appx. 809, 813-13 (3d Cir. July 22, 2009) (denying class certification, in part, because determining reasonableness of medical charges on expense-by-expense basis would necessarily require individualized inquiry); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 75-76 (D.N.J. 1993) (denying class certification, in part, because determining reasonableness of individual car dealer's retail price for car part would require individualized inquiry).

Furthermore, proving damages requires class-member-specific proof. Plaintiff has failed to present any evidence regarding how damages can be proven on a class-wide basis.[17] Thus, predominance is not satisfied here. *See Chudner v. Transunion Interactive, Inc.*, 2010 WL 5662966, at *1 (D. Del. Dec. 15, 2010) (denying class certification because "plaintiff . . . failed to explain how evidence of damages can be proven on a class-wide basis"); *see also Newton*, 259 F.3d at 189 (concluding that determination of individualized damages caused individual questions to be "overpowering," thereby defeating predominance). Proving damages will require individualized evidence of the services performed by the outside foreclosure counsel on each class member's case and an analysis of each counsel's hourly billing rate. Based on the need for individualized proof, class certification is not appropriate. *See Newton*, 259 F.3d at 172.

Moreover, Defendant will assert class-member-specific defenses that increase the

---

[17]At the hearing, Plaintiff's counsel suggested that damages may be proven through a formula and expert testimony. (Tr. at 24) However, Plaintiff failed to produce an expert on damages or put forth a formula for determining damages on a class-wide basis. At this stage of the litigation, the Court cannot rely on Plaintiff's mere speculation; rather, it is Plaintiff's burden to come forward with evidence explaining how damages can be calculated on a class-wide basis. *See Chudner v. Transunion Interactive, Inc.*, 2010 WL 5662966, at *1 (D. Del. Dec. 15, 2010) (noting that "to pass a rigorous analysis examination, a Plaintiff must do more than state a formula could be used to calculate class-wide damages"); *see also Newton*, 259 F.3d at 187-88.

15

individual questions that cannot be answered through class-wide proof. For instance, Defendant contends that it will assert that res judicata and estoppel bar the claims of certain class members based on the fact that some class members were involved in bankruptcy or other judicial proceedings, in which they litigated foreclosure expenses that they now seek to recover. (*See* D.I. 80 at 25; Tr. at 45-46) Additionally, Defendant argues it will have a voluntary repayment defense for those class members who had their loans reinstated. (D.I. 80 at 25-26) Defendant further argues that it will assert statute of limitations defenses with respect to some class members. (*Id.* at 26) Each of these proposed defenses will require individualized proof, which weighs against a finding of predominance.[18] *See generally Ritti v. U-Haul Int'l., Inc.*, 2006 WL 1117878, at *11 (E.D. Pa. Apr. 26, 2006) (determining that presence of individualized defenses defeated predominance).

In sum, due to the numerous individualized questions relating to breach, damages, and potential defenses, the Court concludes that Plaintiff has failed to demonstrate that common questions predominate over individualized issues.[19]

### b. Superiority

In light of the Court's finding that the Proposed Class does not satisfy the predominance requirement, the Court will not address Rule 23(b)(3)'s superiority requirement at length. *See*

---

[18]The presence of unique defenses alone does not defeat predominance, but is something that should be considered. *See Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010).

[19]During the course of briefing on the instant motion, the Third Circuit issued its *en banc* decision in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011). The parties addressed the applicability of *Sullivan* to this case in several briefs (D.I. 83, 87, 88) and during the oral argument. The Court has considered *Sullivan* (which certified a settlement class) and concludes that it does not alter the outcome here. For the reasons stated above, Plaintiff has failed to satisfy the predominance requirement.

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 194 (3d Cir. 2001); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 (3d Cir. 2001) (stating because proposed class does not meet predominance requirement, "we need not dwell at length on the superiority requirement . . . inasmuch as failure to meet any of the requirements of Rules 23(a) and (b) precludes certification of a class"). "However, the diversity of . . . issues that defeat the . . . predominance requirement [] compel[s] the conclusion that the superiority requirement is likewise not met." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

The superiority inquiry requires a court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (internal quotation marks omitted). There are four nonexclusive factors that a court should consider in connection with the superiority inquiry of Rule 23(b)(3):

> (1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action.

*Danvers*, 543 F.3d at 149; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the fourth factor counsels strongly against finding that a class action is a superior means for adjudicating this controversy. The multitude of individualized issues present in proving breach and damages would entail complicated mini-litigations within the class action itself.[20] Although the Court agrees with Plaintiff that the claims could be divided into sub-groups

---

[20]Indeed, Plaintiff has failed to propose a trial plan demonstrating that it would possible or practicable to try this case as a class action given the many individualized issues present. (Tr. at 44)

17

based on common state law,[21] the claims would still require individualized evidence regarding the specific fees charged to each class member and the reasonableness of the fees. Consequently, it would be neither more fair nor more efficient to proceed with this matter as a class action. Thus, Plaintiff has failed to satisfy the superiority requirement.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's Motion for Class Certification. An appropriate Order follows.

---

[21]*See* D.I. 83, Ex. A (wherein Plaintiff groups causes of action into state law groups)

18